GEORGE   A.   WEST,   Respondent,   v.   LEO   MOSER,
Appellant.

St. Louis Court of Appeals, April 5,.1892.

1.  **Res Adjudicata:** ADMISSIBILITY OF PAROL EVIDENCE.   Under a plea
    of *res adjudicata* parol evidence is not admissible to contradict a
    judicial record; but, where the record does not distinctly show what
    was adjudicated in the prior action, this may be proved by parol.

2.  ———: ———: PROOF OF NONSUIT AS TO ONE OF SEVERAL COUNTS.  In
    this cause the issue was whether a judgment in a prior action
    between the same parties, in which the petition contained two counts,
    .determined the rights of the parties under both counts or only under
    one of them, and it was *held* competent for the plaintiff to establish
    by oral testimony that he had taken a nonsuit as to one of these
    counts, though the record of the cause did not recite that fact.

3.  **Severable Contracts:** FORMER RECOVERY.   Where the payments
    under a contract are to be made in installments, and the party bound
    to make them refuses altogether to carry out the contract after some of
    the installments have been earned, the party entitled to payment may
    at once sue for and recover these installments, and, after the expira-
    tion of the period contracted for, sue for his remaining damages; that
    is, his loss of earnings after such refusal.   And *held* that this rule
    should prevail in this cause, though the suit for the installments
    earned was instituted after the time appointed by the contract for the
    payment of a later unearned installment.

4.  **Breach of Contract:** MEASURE OF DAMAGES.   The defendant in
    this cause wrongfully refused to execute his contract with the plaintiff.
    *Held*, that the plaintiff was entitled to recover damages for the non-
    performance of what the contract required the defendant to do, but
    not for more.

*Appeal   from   the   St.   Louis   County   Circuit   Court.*
HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*R. M. Nichols*, for appellant.

(1)  When the contract was broken in July, 1888,
this gave a cause of action, and only one; all damages

flowing from said breach were an entirety; the suit for the keeping of the horses for the months of June and July, 1888, was a part of said damages, and indivisible from any other, which respondent had or could suffer, and the suit for their recovery was an adjudication of all the causes of action flowing from said breach, and should estop respondent in this suit. Bliss on Code Pleading, sec. 118; 1 Sutherland on Damages, p. 175, *et seq.;* Freeman on Judgments, sec. 240; Herman on Estoppel & Res Adjudicata, sec. 259; *Koenig v. Morrison,* 44 Mo. App. 411; *Parks v. Richardson,* 35 Mo. App. 193; *Funk v. Funk,* 35 Mo. App. 251; *Green v. Von der Ahe,* 36 Mo. App. 394. When a person can or may, he must present and sue in one action upon all causes of action growing out of the same contract. If the separate counts were distinct causes, this action was ripe and maintainable, when the judgment was obtained upon the second count, and evidence having been given upon the first count, although it may have been withdrawn, the judgment upon the second count is an estoppel to another action he failed to sustain. Herman on Estoppel & Res Adjudicata, secs. 217, 218; *Epright v. Kaufmann,* 35 Mo. App. 461; *Pinney v. Barnes,* 17 Conn. 420. (2) The court erred in refusing the third instruction offered by appellant, and admitting parol evidence as to the issues in record shown in estoppel, because the record or judgment in evidence conclusively shows what was passed upon in that case: "That the plaintiff take nothing by the first count of his petition," and that he have judgment in the second count for $218.99. Where the record positively shows what was passed upon, parol evidence is inadmissible. *Spaulding v. Conway,* 51 Mo. 54; *Case v. Garton,* 33 Mo. App. 597. The court erred in its construction of the contract. It only binds appellant to keep upon the premises one stallion and three mares for the duration

of the contract, while the court instructed the jury to assess damages on the profits of the highest number of horses brought on the premises, until the termination of the contract. The record shown in estoppel construes the contract to bind appellant only for the actual keeping of the horses, and respondent is bound in this suit by that construction. *Case v. Garton*, 33 Mo. App. 606; *Glasner v. Weisberg*, 43 Mo. App. 215.

*H. M. Pollard*, for respondent.

(1) The judgment in the prior suit is not a bar to a recovery in this action. *Adler v. Kansas City*, 92 Mo. 249; *Railroad v. Traube*, 59 Mo. 362; *Davis v. Brown*, 94 U. S. 428; *Stark v. Starr*, 90 U. S. 485; *Gardner v. Patton*, 15 N. Y. S. 324; *State v. Morton*, 18 Mo. 53; *Koenig v. Morrison*, 44 Mo. App. 411; *Mfg. Co. v. Davis*, 20 Atl. Rep. 1080; Herman on Estoppel, secs. 227, 258; *Baker v. Cleveland*, 19 Mich. 230; *Ressequie v. Byers*, 52 Wis. 650; Bigelow on Estoppel [5 Ed.] pp. 188–198; *Deems v. Dunkin*, 33 Ala. 47; *Contrell v. Roman*, 16 La. Ann. 422; *Merchants', etc., v. Allego*, 31 Pa. St. 446; *Bank v. Johnson*, 3 Cranch, C. C. 228; *Lenoir v. Wilson*, 36 Ala. 600; *Blum v. Holitzer*, 53 Ga. 82. (2) By the terms of the contract the defendant agreed to pay the stipulated price per head for a number of horses equal to the highest number he had on the farm at any one time.

THOMPSON, J.—This action is brought to recover damages for the breach of a contract, by which, in consideration of the plaintiff's erecting certain stalls and structures on a farm leased and occupied by him in St. Louis county, the defendant agreed to furnish a stallion and a certain number of mares to be kept therein at an agreed price per month, to be paid by him to the plaintiff. The answer embodied: *First.* A general

denial. *Second.* A plea of *res judicata.* *Third.* A special defense in the nature of an alternative plea of fraud and mistake in entering into the contract. Nothing concerning the last defense is before us on this appeal. The plaintiff had a verdict and judgment in the sum of $700, and the defendant appeals.

Three substantial questions arise upon the record: *First.* Whether the court erred in admitting parol evidence to show that the first count of the petition in the prior action, pleaded by the defendant as an estoppel, had been voluntarily withdrawn by the plaintiff from the jury by taking a nonsuit as to that count. *Second.* Whether the court was right in instructing the jury that, if they should find that the first count of that petition had been so voluntarily withdrawn by the plaintiff, that action did not estop the plaintiff from maintaining the present action. *Third.* Whether the court was right in instructing the jury as to the measure of damages. We shall consider these three subjects separately, and shall state in connection with each such facts as appear to be sufficient to make our holding understood.

I.   In order to understand the first subject of contention, it is necessary to state that the parties had a disagreement as to the amount which should be paid under the contract for keeping the horses for the month of June, 1888, and that the defendant refused to pay the bill which the plaintiff rendered for that month, unless a certain deduction was made, which the plaintiff refused to make. It further appears that at the expiration of the next month, namely, on the thirty-first of July, 1888, the defendant withdrew all of his horses from the premises of the plaintiff. and refused in any manner further to perform the contract on his part. It further appears that on the fifth of September, 1888, the plaintiff instituted a suit in the circuit court of the

city of St. Louis, against the defendant for breaches of the contract, upon a petition containing two counts. The first count of the petition was for damages for the breach of the contract identical with the allegations of the petition in the present suit. The second count was for the breach of the contract during the two months of June and July, 1888. In other words, the second count was for *past breaches* of the contract at the time when the defendants refused to proceed further with it, and the first count was for damages accruing to him for the refusal of the defendant to proceed in the future with the performance of the contract. The record of the pleadings and judgment in that case does not show a withdrawal of the first count of the plaintiff's petition prior to the verdict. But the record is made up in the usual way, so far as to show that the cause came on for trial, that a jury was impaneled, and the issues were submitted to the jury; and then it recites, "that the trial of this cause progressed, and, being fully terminated, the jurors aforesaid, upon their oaths aforesaid, say they find for the plaintiff and assess his damages at the sum of $218.99," upon which verdict judgment was entered in the usual way. Afterwards another entry of record appeared, setting aside the judgment thus recited, and re-entering *nunc pro tunc*, as of the date of the original entry, the same judgment in favor of the plaintiff and also a judgment in favor of the defendant for costs. This *nunc pro tunc* entry concludes as follows: "Therefore, it is considered by the court that the plaintiff *take nothing by the first count of his petition*, but he recover of the defendant the sum of $218.99, and all costs accrued therein, up to and including the twenty-first day of February, 1889; and that the defendant recover of the plaintiff all costs that have accrued herein since said twenty-first day of February, 1889, and that execution issue in conformity with this judg-

ment." The peculiarity of this *nunc pro tunc* entry is explained by the statement that the defendant had tendered the sum of $218.99 in his answer, as being due from him to the plaintiff *under the second count.* It thus appears that, according to the record of the prior trial, there was no verdict of the jury responsive to each count, as is required by the rules of civil procedure. It also sufficiently appears that the judgment which was rendered was intended to be rendered under the second count only; for the amount of judgment and the disposition of the costs having reference to the plea of tender can be explained in no other way; nor can effect be given to so much of the *nunc pro tunc* entry, as says that the plaintiff shall take nothing by his first count in any other way. But it also appears that the record is silent as to how the issue made by the first count and the answer thereto passed out of the consideration of the jury or came to be withdrawn, so that it did not form a part either of the verdict or of the judgment, except in so far as the judgment recited, without any verdict upon which to predicate the recital, that the plaintiff should take nothing by his first count. To supply this deficiency the plaintiff offered parol evidence, and, against the objection and exception of the defendant, proved by two witnesses that the plaintiff withdrew his first count from the jury before the cause was finally submitted to them.

In this ruling we perceive no error. Under a plea of *res adjudicata*, it is equally inadmissible, as in any other case, to introduce parol evidence to contradict a judicial record; but, where the record does not distinctly show what was adjudicated in the prior action, this may be proved by parol. The doctrine was thus stated by WAGNER, J., in *Hickerson v. City of Mexico,* 58 Mo. 61, 65: "It is undoubtedly true, that, in some of the earlier cases, it was decided that a judgment was

conclusive as to all facts arising upon the record which were, or might have been, passed upon. But it is now generally, if not universally, conceded that parol evidence may be received for the purpose of showing whether a question was determined in a former suit. The record may first be put in evidence, and then it may be followed by such parol evidence as may be necessary to give it effect, or show on what issue it was grounded. When a number of issues are presented, the finding in any one of which will warrant the verdict and judgment, it is competent to show that the finding was upon one rather than another of these different issues. In order to show by evidence *aliunde* that a matter is *res judicata*, it must appear not only that it was properly in issue in the former trial, but also that the verdict and judgment necessarily involved its determination. If it appears *prima facie* that a question has been adjudicated, it may be proved by parol testimony that such question was not in fact decided in the former suit. Where matters could have been proved in a former action, the presumption is that they were proved, but this presumption may be rebutted and overthrown." This view is not at all incompatible with the holding of the Kansas City Court of Appeals in *Case v. Garton*, 33 Mo. App. 597, to the effect that, where the record is positive and distinct that a certain issue was adjudicated, it is not competent to show by parol evidence that such issue was not adjudicated in the prior action. The record may be explained and its generalities, obscurities or deficiencies may be helped out by parol evidence, as was done in the case before us; but where it is positive and distinct in its recitals it cannot be contradicted. There is obviously no error in the ruling under this head.

II. On the issue of *res judicata*, the court instructed the jury that, "if the evidence shows that said issue was withdrawn from the consideration of the

jury before submission, and was not considered by such jury, then there can be no finding for defendant on this ground;" and the court refused to instruct them, as requested by the defendant, that if they should believe that the former action contained the same issues as the action depending before them, and that those issues were passed upon in the prior action, their verdict should be for the defendant.

We perceive no error in these rulings. The contention of the defendant is, in substance, that this was an entire contract, and that but one action could be maintained to recover damages for its breach. It is what is called a severable or divisible contract. It was a contract to make certain payments to the plaintiff in installments at a certain rate "per month." The contract uses this expression, "per month," in several places. It says in one place: "In consideration of these structures being prepared and constructed for said Moser's benefit, the said Moser hereby agrees to furnish for keeping in said box, stall and yard one stallion, for which said Moser hereby agrees to pay the said West for keeping the same the sum of $20 *per month* from the time when said barnyard shall be ready for occupancy," etc. Further on it recites: "And the said Moser, in consideration of the aforesaid structures being erected exclusively for his use and benefit, hereby agrees to furnish said stallion and said mares at the above-stipulated prices *per month* for said stallion, and $8 per month for each mare to be furnished for keeping by said Moser, as above stipulated, from the date of delivery," etc. And further on it says: "But it is agreed and understood by and between the parties hereto that, in case of the failure of Moser to furnish other horses or other mares as substitute, it is hereby agreed, and said Moser hereby agrees, to pay said West the sum of $28 *per month* for said stallion and mares,

West v. Moser.

and $16 *per month* for the two additional mares to be furnished by said Moser as stipulated above (in all $44 per month) until the termination of the lease of said farm," etc. In fact we do not understand that there is any dispute between the parties upon the question that the understanding was that payments under the contract were to be made "per month," and at the close of each month. The bill, which was the subject of adjudication in the former suit for the month of June, was rendered upon that theory, and was objected to upon another ground, and so it seems was the bill for July, which was also adjudicated in that suit.

Now, it is the settled law that, where payments are to be made under a contract *in installments*, a separate right of action accrues to recover each installment whenever that installment is due, and is not paid. The decision of the supreme court of this state in *Adler v. Railroad*, 92 Mo. 242, is to the effect that, where payments under a contract are to be made in installments, and one of those payments is retained by the party who is to make the payment, until a specified time, that installment may be separately assigned, because it is a separate demand or cause of action. In giving the opinion of the court, NORTON, J., said: "While the contract is entire, there can be no doubt, under the rule, in the case of *Union Ry. & Trans. Co. v. Traube*, 59 Mo. 363, that each monthly payment, as it became due, constituted a separate demand, for the recovery of which an action could be maintained; and there can be no question as to the fact that, within ninety days after the completion of the work, in the event of the non-payment of the retained percentage, that an action would be maintainable for its recovery as a separate and distinct debt or demand. It is this separate demand as an integer which is the subject of the assignment." In

the case referred to in this language, the doctrine is thus stated by NAPTON, J.: "It is now well settled that a judgment concludes the rights of the parties in respect to the cause of action stated in the pleadings on which it was rendered, whether it includes the whole or only a part of the demand sued on, upon the ground that an entire claim, arising either upon a contract or wrong, cannot be split up into several actions. Where the demands arise out of separate and distinct causes of action, the rule is otherwise. And, even when several claims, payable at different times, arise out of the same contract or transaction, separate actions may be brought as each liability accrues; but in this case it has been held, that, if no action is brought until more than one is due, all that are due must be included in one action, and, if an action is brought when more than one is due, a recovery in that suit will be a bar to a second action brought to recover the other claims that were due when the first was brought." *Union, etc., Co. v. Traube*, 59 Mo. 355, 362, citing *Reformed Dutch Church v. Brown*, 54 Barb. 191. Several other cases in this state reiterate and apply, in various situations, the principle that a party cannot split an entire demand and compel his antagonist to litigate it with him in a number of separate actions; but that, if he elect to litigate one part of it in one action, that action will be a bar to any further action for any other part of it. *Green v. Von der Ahe*, 36 Mo. App. 398; *Koenig v. Morrison*, 44 Mo. App. 411; *Funk v. Funk*, 35 Mo. App. 251, and cases cited; *Moran v. Plankinton*, 64 Mo. 337.

Applying these principles to the facts of this case, we must conclude that they do not operate to bar the present action. The final refusal of the defendant further to proceed with the contract occurred on the thirty-first of July, 1888, when the defendant withdrew all his horses from plaintiff's premises and custody.

The former action was brought on the fifth of September, 1888. His claim for all other damages accruing to him from the breach of the contract, including what would accrue to him under the contract for the month of August, 1888, was embraced in the first count of his petition, which, as already seen, was withdrawn from the consideration of the jury by his taking a nonsuit as to that. As the plaintiff already had, under the contract, a right of action for each separate installment as it accrued, whether defendant actually kept any horses in his stable or not, the most that can be said, even under the rule as laid down in the language as above quoted from *Union, etc., Ry. Co. v. Traube,* is that the plaintiff, when he brought the former action, was bound to include in that action his claim for the installment due him for the month of August, 1888. But that would not prevent him from waiting until the expiration of the entire period of time covered by the contract, as he did, and then suing for all installments subsequent to that due for the month of August, 1888. But, as the failure of the plaintiff to litigate in the former action, the question of his compensation for the single month of August, 1888, has not resulted in vexing the defendant with a *third* action, we are not prepared to say that it would be proper to exclude that month from his recovery in the present action. On the whole, we are inclined to think that the rule of public policy which prohibits a party from splitting his cause of action and vexing his antagonist with a multiplicity of actions is, under the facts of this case, fully subserved by allowing the plaintiff to recover, as he did in the former action, what was due him for services actually rendered and expenditures actually made under the contract for the months of June and July, 1888, and then to wait until the expiration of the period named in the contract, and then sue for, and recover in

one action, all damages, consisting of his loss of profits for the breach of the contract by the defendant during the entire remaining period. We, therefore, hold that the circuit court committed no error in its ruling under this head.

III. But we are not able to come to the same conclusion in respect to the third assignment of error. This relates to the measure of damages. Upon this head the defendant requested the court to give the following instruction, which the court refused: "The court instructs the jury that, under the evidence in this case, the defendant had a right to remove all his horses from said premises, excepting one stallion and three mares, at any time he might choose, without in any way being liable to plaintiff for damages for so doing; and, if the jury find a verdict for the plaintiff, in assessing his damages they must not take into account any profits, if any, that the plaintiff might have made on any of the animals other than the one stallion and three mares, nor should they take into account any costs which the plaintiff may have incurred in the erection and construction of any of the stables, sheds, buildings or paddocks upon the Kent farm; and, if they find a verdict for the plaintiff, they must assess his damages only at the contract price, less what it would have cost the plaintiff to furnish the best hay and grain and pasture raised on said farm, for said stallion and three mares from August 1, 1888, to June 3, 1890."

Instead of this the court gave the following instruction at the request of the plaintiff, the defendant excepting: "The jury are instructed that, if they find for plaintiff, they will assess his damages at such sum as they believe from the evidence his profit would have been on the keeping of one stallion and the *highest number of mares defendant had for keeping on plaintiff's*

*farm* at any time from June 3, 1887, to July 30, 1888, from the time defendant removed his horses from said farm to the third day of June, 1890; and, in estimating such profits, they will subtract the actual cost to the plaintiff of the hay and grain said horses would have eaten, and their necessary bedding, from the amount defendant bound himself to pay by said contract, viz., $20 per month for said stallion and $8 per month for each of said mares, to which should be added the value of their manure.''

We know of no principle, which can make the measure of the plaintiff's damages the highest number of mares defendant had for keeping on plaintiff's farm at any time from the beginning of the contract to its final breach by the defendant on July 30 (should be 31), 1888. The plaintiff is entitled to recover the damages sustained by him by reason of the defendant not doing what he agreed to do, and no more. The contract was drawn by a justice of the peace, and not by a lawyer, and, hence, its provisions are not as clear and distinct as they might have been made. But a careful reading of it shows that the defendant never assumed to do more than to furnish to the plaintiff one stallion to be kept at $20 a month and three mares to be kept at $8 per month, making a total of $44 per month. That being the most that the defendant agreed to do, the measure of damages of the plaintiff is the profit that he lost by reason of the failure and refusal of the defendant to do that from the thirty-first of July, 1888, until the period of the expiration of the lease which the plaintiff held under his landlord Kent,—which was the period named in the contract. The damages awarded by the jury appear to be very small when gauged by the theory laid down in the instruction given them by the court, but, as we are unable to discover from their verdict what theory they may have taken as to the

amount of profit which would have accrued to the plaintiff under the contract during the months wherein the defendant refused to furnish any horses to the plaintiff to be kept, we are unable to direct a *remittitur*, and must reverse the judgment and remand the cause for another trial of the plaintiff's damages under the construction of the contract as declared in this opinion. It will be so ordered.

All the judges concurring, the judgment is reversed and the cause remanded.