THE STATE ex rel. J. E. THOMPSON, Judge of Probate Court, v. ALBERT D. NORTONI et al., Judges of St. Louis Court of Appeals.

In Banc, January 17, 1917.

1. **CERTIORARI: Probate Judge as Relator: Sole Party.** Where the Court of Appeals has rendered judgment, in a mandamus brought originally in that court, against a probate judge, requiring him to appoint the widow administratrix of the decedent's estate, he has such interest in the controversy as entitles him to the writ of *certiorari* from the Supreme Court. When a party has such an interest in a controversy that under the law he must be made a party thereto for a determination thereof, he has sufficient interest (after judgment against him) to invoke the writ of *certiorari,* and thereby test the validity of the judgment.

2. ————: **Motion to Transfer.** It is not necessary to file in the Court of Appeals a motion to transfer after a motion for a re-

hearing has been overruled, before applying to the Supreme Court for a writ of *certiorari*.

3. **ADMINISTRATION**: Widow's Right to Appointment: Mandamus. The probate court should appoint the widow administratrix unless she is precluded from acting under some provision or rule of law; and mandamus will lie to compel the appointment of a person entitled thereto under Sec. 15, R. S. 1909. But the disqualifications mentioned in section 14 are not the only things that will prevent the widow's appointment.

4. ————: ————: Waiver: Ante-nuptial Contract. The widow may waive her right to administer upon her husband's estate, and this may be done by contract or *in pais*.

5. ————: ————: ————: ————: Adjudicated by Probate Court. The question of whether the widow by an ante-nuptial contract, or otherwise, has waived her right to administer her husband's estate is a judicial question for the determination of the probate court, when she applies for appointment and her application is opposed on that ground; and where the probate judge has adjudged that she has waived her right, that judgment cannot be reviewed by mandamus, and the Court of Appeals cannot by a mandamus writ compel him to appoint her.

### *Certiorari.*

RECORD QUASHED.

*W. C. Hughes, Jones & Hayden, Hostetter & Haley* and *Pearson & Pearson* for relator.

(1) The St. Louis Court of Appeals' action and decision, in so attempting to control and direct relators' judicial acts and discretion, is outside of, and beyond its jurisdiction, and in direct conflict with not only the last two controlling decisions of the Supreme Court, to-wit; State ex rel. v. Holtcamp, 185 S. W. 204, and State ex rel. v. Wurdeman, 187 S. W. 259, but also four others of a more remote date, to-wit; State ex rel. v. St. Louis Court of Appeals, 87 Mo. 376; State ex rel. v. McGowan, 89 Mo. 157; State ex rel. v. Allen, 92 Mo. 24; State ex rel. v. Broaddus, 207 Mo. 121; and one decision of the St. Louis Court of Appeals, to-wit; In re Estate of Evans, 117 Mo. App. 635. (2)

'A judicial act or discretion cannot be controlled or directed by a writ of mandamus. State v. Holtcamp, 185 S. W. 204; State v. Wurdeman, 187 S. W. 269. (3) Errors cannot be corrected by mandamus. The judgment of the probate court of Pike County might not have been correct; and it doubtless was not such a judgment as the St. Louis Court of Appeals would have rendered in an original proceeding before it; but, this did not give the St. Louis Court of Appeals the right, or jurisdiction, to either review or correct said judgment. In re Breck, 252 Mo. 327; State ex rel. v. Johnson, 138 Mo. App. 313.

*Ed. Corwine, D. A. Ball* and *Richard H. Norton* for respondents.

(1) Relator has no interest in the subject-matter of the litigation and is not a proper party to maintain *certiorari.* R. S. 1909, sec. 1729.; State ex rel v. Staten, 187 S. W. 44; Davison v. Otis, 24 Mich. 25; People v. Leavitt, 41 Mich. 470; Blodgett v. McVey, 131 Iowa, 552; Colden v. Botts, 12 Wen. 234. The same rule is established in the law of mandamus which is analogous in this respect to the law of *certiorari.* High, Extra. Rem. (3 Ed.), sec. 33; State v. Commissioners, 4 Kan. 261; Mossy v. Harris, 25 La. Ann. 623; Gregory v. High, 29 Ind. 527; People v. Board, 18 Barb. 567. A writ of *certiorari* is a new suit. It is not a part of the old action, but resembles in nature a writ of error, which is an entirely new proceeding, independent of the case which it reviews. Macklin v. Allenburg, 100 Mo. 343. (2) But under the probate law, especially the first part of Sec. 15, R. S. 1909, there is no discretion vested in the probate judge when the party applying for administration is not within the disqualifications of section 14. R. S. 1909, secs. 14-15; State v. Thompson, 187 S. W. 804; State v. Collier, 62 Mo. App. 38. (3) Relator is not entitled to maintain this writ of *certiorari* under the provisions of the Constitution (Amendment 1884, sec. 6) without applying first to the Court of Appeals for a transfer of the cause to the

Supreme Court upon the ground of conflict with some
of its decisions, or with some previous ruling of the
other Courts of Appeals.    Constitution, Amendment
1884, sec. 6; Nichols v. Court, 1 Mo. 357; State v.
Court, 41 Mo. 598. (4) The opinion of the Court of
Appeals in the mandamus case against the relator is
not in conflict with any decision of the Supreme Court
or of the Courts of Appeals, but on the contrary is
in harmony with those cited on that subject by learned
counsel for relator.    Mandamus has a familiar juris-
diction to compel officers charged with a definite duty,
either by statute or other law, to obey that law and to
perform that duty. It is available also to correct abuse
of discretion where there is discretion; as where a court
is bound by law to a certain duty, but refuses to per-
form it, without evidence to warrant its refusal. State
v. Collier, 62 Mo. App. 38; State v. Thompson, 187 S.
W. 804; Hall v. Court, 27 Mo. 329; State v. Rombauer,
44 Mo. 590; State v. Lewis, 76 Mo. 370; State v. Fraker,
166 Mo. 130; State v. Court, 41 Mo. 221; McCleary v.
Adsock, 206 Mo. 550; State v. Cook, 187 S. W. 1122.
(5) Even if the subject of a waiver of the right to ad-
minister could be made an issue (which we deny) as
to persons under the first class mentioned in Sec. 15,
R. S. 1909, namely, "the husband or wife," upon ap-
plication for letters testamentary, the record here dis-
closes that there is no testimony of any agreement
by Mrs. Scanland which would constitute such a waiver
under the laws and decisions in Missouri. R. S. 1909,
sec. 362; Perry v. Perryman, 19 Mo. 469; Johnson v.
Johnson, 23 Mo. 561; Mack v. Heiss, 90 Mo. 578;
Farris v. Coleman, 103 Mo. 361; Rice v. Waddill, 168
Mo. 113; Morgan v. Stewart, 173 Mo. 207; King v. King,
184 Mo. 99; Lowe v. Lowe, 146 S. W. 100.

GRAVES, C. J.—*Certiorari* to the St. Louis Court
of Appeals. The pertinent facts are few and simple.
Charles B. Scanland died in Pike County, Missouri,
May 31, 1916. Shortly thereafter the widow Anna Estel-
la, applied for letters of administration upon the estate.

Relator herein was and is the probate judge of Pike County. Objections were interposed as to the appointment of the widow as administratrix. In the course of the investigation it appeared from the evidence that there was an ante-nuptual agreement between the deceased, and the widow. The probate court refused to appoint the widow as administratrix, and in his findings and judgment, among other things, found and adjudged:

"The court doth further find from the evidence that the deceased and the applicant, Anna Estella Scanland, just before their marriage, entered into and executed a marriage contract by the terms of which the applicant agreed and contracted to receive a stipulated sum of money before their said marriage and an annual stipulation thereafter during said marriage or so long as the said applicant should continue the wife of deceased, in lieu of all marital rights in the estate of deceased, and thereby relinquish all right or interest in the estate of the decedent. . . .

"And the court doth further find and adjudge from the evidence that the applicant waived any right she might otherwise have to administer up on the estate of the deceased by and through the marriage contract by her and the decedent executed and entered into previous to their marriage.

"Wherefore the application of the said Anna Estella Scanland to be appointed administratrix of the estate of the said Charles B. Scanland, deceased, is denied and refused by the court."

The probate judge then appointed the public administrator to take charge of the estate. Thereupon the said Anna Estella Scanland brought mandamus proceedings in the St. Louis Court of Appeals to compel the relator here, as probate judge of Pike County, to appoint her as administratrix of her husband's estate.

The relator here, among other things, in his return set up in the Court of Appeals his judgment theretofore entered in the probate court, the material portions of which we have quoted supra. The St. Louis Court of Appeals, notwithstanding the return aforesaid,

granted the writ of mandamus, directing relator here to vacate his order appointing the public administrator as administrator of the estate, and further directing him to appoint Anna Estella Scanland as administratrix of such estate. As against this judgment and the opinion upon which it is predicated our writ of *certiorari* is invoked. Other matters will be noted in the course of the opinion.

I. It is urged in the first place that the relator has no such interest in the controversy as entitles him to invoke our writ of *certiorari*. This position of counsel is untenable. The proceeding in the St. Louis Court of Appeals was one against the relator here and none other. The writ issued in that case was directed against him, and none other. The judgment entered in that case was against him and none other. It would be a very singular condition if it could be said that the respondent in a mandamus proceedings is so interested that he is made the sole party, and then after judgment against him his interest at once vanishes so that he cannot question the validity of that judgment on *certiorari*. In other words, his interest is such that he is the necessary party to the suit, yet when he is beaten in the suit, his interest vanishes so that he cannot gainsay the validity of the record upon which the judgment against him is founded. This is one of the contentions here. It is untenable absolutely. When a party has such an interest in a controversy, that under the law he must be made a party thereto (in this case the sole party thereto) for a determination of the controversy, it should not be said that he has not sufficient interest (after judgment against him) to invoke our writ of *certiorari*, and thereby test the validity of the judgment. In the particular case, if relator could not question the judgment, no other person could, because he was the sole respondent in the mandamus proceeding, and any other party would be a stranger to that record. We are cited to State ex rel. v. Reynolds, 190 Mo. 578; but that case touches no part of the question.

*Interest in Suit.*

It is urged that the suing out of a writ of *certiorari* is a new action, and we are cited to Macklin v. Allenberg, 100 Mo. l. c. 343. That case discusses a writ of error rather than a writ of *certiorari*, but this is immaterial. Grant it that the suing out of the writ is a new action, the situation as to interest is not changed. The purpose of the new action, so far as this relator is concerned, is to rid himself of a judgment against him. If he hasn't an interest in that judgment no person has, because he is the sole person against whom the judgment is entered. We can but conclude that the relator had the right to apply for and secure our writ of *certiorari*.

II. A further preliminary matter should be determined. In respondent's brief it is said:

"Relator is not entitled to maintain this writ of *certiorari* under the provisions of the Constitution (Amendment 1884, sec. 6) without applying first to the Court of Appeals for a transfer of the cause to the Supreme Court upon the ground of conflict with some of its decisions, or with some previous ruling of the other Courts of Appeals."

Motion to Transfer.

We are all familiar with this section. It provides: "When any one of said Courts of Appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said Courts of Appeals, or of the Supreme Court, the said Court of Appeals must, of its own motion . . . certify and transfer said cause or proceeding . . . to the Supreme Court," etc.

Nothing in this section required the relator to file a motion to transfer the case here. The judgment in the Court of Appeals was by a united court. By motion for rehearing the court's attention was called to the matters now urged, but this motion was overruled. The Court of Appeals was not left without notice of the things now urged against its judgment and opinion. The cases cited do not cover the question. It is not

necessary to file a motion to transfer, after motion for rehearing has been overruled, before applying to this court for a writ of *certiorari*. The relator did all that he was required to do.

III. The gist of this case lies within a small compass. Mrs. Scanland applied for letters of administration upon her husband's estate. Her application was opposed by some heirs at law. In the course of the hearing there was evidence of an ante-nuptual agreement.

**Record.**   The probate court heard this evidence, and then found therefrom, thus:

"And the court did further find and adjudge from the evidence that the applicant waived any right she might otherwise have to administer upon the estate of the deceased by and through the marriage contract by her and the decedent executed and entered into previous to their marriage.

This appears in the return filed in the St. Louis Court of Appeals. There were other findings as to her character and competency, but we put them aside. These also appeared in the return in the St. Louis Court of Appeals. In other words, the case there was one upon pleadings only and a motion for judgment on same. The Court of Appeals mentions this finding and judgment of the probate court in its opinion, but it would be immaterial whether it did or not, because it is in the very pleadings upon which the opinion and judgment is founded. It does not come by way of bill of exceptions, but is the record proper in the case, which record is before us by our writ of *certiorari*. On this return or record, the court by its opinion and judgment, directed a permanent writ of mandamus to be awarded directing the relator here, the respondent there, to appoint Mrs. Scanland as administratrix. The question is, does this ruling contravene rulings of this court? We think so, for reasons we will assign.

IV. The Court of Appeals properly announces the general rule, that under section 15, Revised Statutes, 1909, the probate court should have appointed the widow

as administratrix, unless she was precluded from acting by some provision or rule of law. The Court of Appeals also properly rules that generally speaking mandamus will lie to compel the appointment of a person entitled thereto under section 15, which section reads:

**Widow as Administratrix.**

"Letters of administration shall be granted.: First, to the husband or wife; secondly, to those who are entitled to distribution of the estate, or one or more of them, as the court or judge or clerk in vacation shall believe will best manage·and preserve the estate."

We have held mandamus to be a proper remedy, State ex rel. v. Fowler, 108 Mo. 465. It runs amuck, however, when it rules that the·only things which will prevent her appointment are the disqualifications mentioned in section 14, Revised Statutes, 1909, which section reads:

"No judge or clerk of any probate court, in his own county, or his deputy, and no male person under twenty-one years of age, or female person under eighteen years of age, or of unsound mind, shall be executor or administrator. No married woman shall be executrix or administratrix, nor shall the executor of an executor, in consequence thereof, be executor of the first testator."

There is such a thing as waiving the right to administer. This may be done by contract, as indicated in. the case at bar, or it may appear from matters *in pais,* as in State ex rel. v. Holtcamp,· 267 Mo. 412. One entitled to administer cannot be compelled to administer, so the law denominates it a personal privilege which may be waived.

In the case at bar the probate court found and adjudged that the widow had waived the right to administer, and yet with this solemn adjudication before it, in the return to the mandamus, the Court of Appeals made the writ permanent, and directed the appointment of the widow. This ruling was squarely in the face of the unanimous ruling of our brothers of Division Two ·· State ex rel. v. Holtcamp, supra, 267 Mo. l. c. 424,

whereat, in discussing the question of waiving the right to administer, it was said:

"We are, therefore, of the opinion that the probate court was not only called upon to determine the legal effect of the resignation filed in Ohio, but also the question of fact as to what relator's intentions were, and how far he had renounced *in pais;* and, in this connection, it had a perfect right to weigh and consider all of relator's acts and conduct. This required the exercise of judicial discretion, and it is too well settled to even warrant the citation of authorities that such discretion cannot be controlled by mandamus."

So in the case at bar, the question as to whether or not the widow by contract or otherwise had waived her marital right to administer, was a judicial question for the determination of the probate court. When it acted its judgment was not for review upon mandamus. Judicial acts, completed as here, are not the subjects of mandamus proceedings. To illustrate, take the very statute, cited by the court, section 14, supra. Suppose the widow had applied. Suppose there were objections to her appointment, and the probate court upon hearing the facts, found that the widow was insane. Would it be said that such court could be compelled by mandamus to appoint the widow, with such an adjudication pleaded in the return? The determination would be a judicial act and not subject to review by mandamus. There can be no question that a woman by an ante-nuptial agreement can waive her right to administer. That question of waiver is to be determined by the probate court to whom she applies for letters. If not, there is no place for its determination. The matter of whether there has been a waiver of the right is a judicial question, and as said in the Holtcamp case, supra, the judgment can't be controlled by mandamus. That mandamus will not lie under such situation is also ruled in State ex rel. v. Wurdeman, 187 S. W. 259, where Bond, J., says:

"In view of the foregoing constitutional and statutory provisions, the conclusion is inescapable that the report of the grand jury in the present proceeding pre-

sented matter requiring the exercise of the judicial faculty on the part of the circuit judge in determining whether it should be expunged or permitted to remain among the files and record of the court. But it is elementary that any decision which he might make in the exercise of his judicial discretion is one which cannot be directed by writ of mandamus from any court. The judge may be compelled to exercise his jurisdiction and make a decision or render a judgment, but the kind of decision or the nature of his judgment, resting on his judicial discretion, cannot be controlled by this writ.''

We grant it, that if the return in the mandamus case had only disclosed a refusal to appoint the widow, without the showing of an adjudication upon the question of the waiver, a different situation might prevail. But it was for the probate court to determine the question of waiver upon the evidence before it, and not for the Court of Appeals to attempt to determine that question in a mandamus proceeding. It may be that some other probate judge might have rendered a different judgment on the question of waiver, with the facts found in this case, but that is not a matter for consideration in mandamus. It may be unfortunate that the statute provides for no appeal from the probate court in such cases, but the remedy is with the law-makers, and not with the courts. Our cases have reached the limit in upholding mandamus to compel an appointment of the party entitled by virtue of the statute, but we have not gone so far as to hold that if, upon the application of the party entitled, a question arises which requires judicial determination, mandamus will nevertheless lie.

The opinion of our learned brothers contravene our opinions in the Holtcamp and Wurdeman cases, supra, as well as other cases we might cite. The court was wrong in proceeding as if they could determine the question of waiver in a mandamus proceeding.

Other matters found by the probate court we need not discuss. But upon them the probate court had no right

to refuse the application of the widow. We have selected the one vital question.

The judgment and record of the St. Louis Court of Appeals should be and is quashed. All concur, except *Bond, J.,* who dissents.