STATE EX REL. EB J. WASHER, RELATOR, v. EDWARD E. PORTERFIELD, JUDGE, ETC., RESPONDENT.—258 S. W. 722.

Kansas City Court of Appeals. February 11, 1924.

506

*Jacobs & Henderson* for relator.

*Scarritt, Jones, Seddon & North* for respondent.

TRIMBLE, P. J.—This original proceeding in mandamus was brought by relator, as father of Patricia Washer, a nineteen-months old infant, against Honorable EDWARD E. PORTERFIELD as judge of the juvenile court of Jackson county, Missouri, to compel him to allow an appeal in a certain matter pending in said juvenile court, entitled State of Missouri v. Patricia Washer, wherein the child was charged with being a neglected child. (The authority for such matters being considered and adjudicated in the juvenile courts of counties having over fifty thousand inhabitants, is found in article VI, chapter 21, Revised Statutes 1919.) The charge in the application for the writ was that respondent as judge of said juvenile court had taken the child from relator's possession, and, after adjudging that it was a neglected child, had committed it to the custody of its mother, Ursula Catherine Washer, without hearing any evidence that the child was neglected or delinquent; that relator took the specified necessary steps to appeal and duly tendered a supersedeas bond, but said

juvenile judge refused to accept or approve said bond and also refused to allow an appeal. The application for the writ and the alternative writ itself cover not only the allowance of an appeal but also seek to have the judge of said juvenile court "accept said supersedeas bond in the same cause and upon the filing of said bond, turn over to the relator Eb J. Washer" the said infant Patricia Washer.

From the return of respondent, the answer thereto and from the statements respectively made in open court by opposing counsel, we gather the following facts:

The infant, Patricia Washer, was adopted by Eb J. Washer and Ursula Catherine Washer, his wife, in May, 1922, and all three then lived thereafter in Jackson county, Missouri. Differences apparently arose between husband and wife, and, on account of the conduct of his wife, so the husband states in his application for the writ, he "deemed it advisable to remove the said Patricia Washer from the home a short time" and he took the child to Camelsville, Kentucky, and was gone for a period of three and one-half months. It is further stated that he then sent the child to Jackson county, Missouri, in charge of a probation officer from the juvenile court at Lexington, Kentucky; that when the Kentucky probation officer reached St. Louis, the mother, Ursula Catherine Washer, tried to get possession of the child but the probation officer proceeded to Kansas City with the child, and upon arrival of the child at Kansas City in possession of the Kentucky probation officer, the probation officer of Jackson county, Missouri, filed a petition in the Jackson county juvenile court, on December 12, 1923, charging that Patricia Washer was a neglected child suffering from the cruelty and depravity of both its parents. (Both the application for the alternative writ and the latter writ itself says the charge in the petition was that the child was a delinquent and neglected child, but the petition itself shows that it charged that Patricia was a neglected child, and manifestly it is difficult to see how a child of that tender age could be delinquent.)

On December 15, 1923, the juvenile court assumed jurisdiction over the child and the minute entry of the clerk shows that Patricia Washer was "made ward as neglected, and committed to foster mother, Mrs. Eb Washer, 914 Armour Boulevard. Mr. Washer, foster father, may visit the child at the mother's home every other day, but he is not to take the child our of her sight or possession. Child to be under careful supervision of P. O." (Probation Officer.) However, another minute entry made the same day shows the same entry except that the commitment of the child is not a final order but the child is committed to the mother, Ursula K. Washer, "pending divorce trial."

The record of the order as fully written out and spread upon the records of the court recites that it appearing to the court that a divorce action, instituted by the husband (Eb J. Washer) on December 12, 1932, against his wife, was pending in the circuit court of Jackson county, Missouri, in which the plaintiff was asking a decree awarding him the custody of the child, and it further appearing that Eb J. Washer had, on September 3, 1923, taken said child to Kentucky and secreted it in that State, until it was returned to this State by Ursula Catherine Washer on or about December 12, 1923, "and that said child was in the possession of said Ursula Catherine Washer at the time of the institution of this proceeding, and the court having heard all of the evidence and being fully advised in the premises,

"It is ordered and adjudged that pending the hearing of the aforesaid action for divorce, said Patricia Washer be and she is made a ward of this court and committed to the care of Ursula Catherine Washer at her home 914 E. Armour Boulevard, Kansas City, Missouri, under the care and supervision of the probation officer of Jackson county, Missouri; that said Eb J. Washer be permitted to visit said child at its mother's home every other day, but that he shall not take said child out of the sight or possession of the said mother."

The next day motion for new trial was filed by the foster father, the relator herein, and the same was overruled. Application and affidavit for appeal were filed, but the court, on December 27, 1923, denied the right of appeal, refused to allow same and refused to accept, approve, or file, appeal bond.

The proceeding relator has instituted seeks to have the judge of the juvenile court to not only grant an appeal and to accept an appeal bond, but also to turn the child over to relator. It would seem to be clear that such an alternative writ could not be made peremptory. However, we prefer to pass this question and also the further question as to whether Mandamus is the proper remedy in this case. In State ex rel. v. Calhoun, 201 Mo. App. 374, it is held that, since mandamus will not lie when there is another adequate remedy, and since section 2592, Revised Statutes 1919, provides that the practice and procedure in juvenile cases (where, as in this, the child is not charged with a criminal offense) shall be as in equity cases, and as section 1474, Revised Statutes 1919, authorizes a judge of an appellate court, "in cases appealable to said court" respectively, to grant an appeal by special order within one year if error appear upon an inspection of the record, therefore that method of obtaining an appeal is an adequate remedy and mandamus would not lie. If we were to place our denial of the peremptory writ on that ground, it would still leave the matter open so that an application for a

special order of appeal under section 1474 might be made. Hence we prefer to pass by these questions here noticed, and without deciding whether or not in certain cases mandamus to compel an appeal is a proper remedy, we bottom our disposition of the case on the ground that the order made by the juvenile court, and from which relator seeks an appeal, is not a final judgment and therefore it is not appealable.

The right of appeal is, of course, a creature of the statute and unless such right is given, no appeal can be had. [Drainage District No. 4 v. Wabash R. Co., 216 Mo. 709, 715.] Unless there is some statute creating an exception, appeals lie from *final* judgments only. [In re Wilhemina District; Colonization, etc., Co. v. Seeley, 280 Mo. 1, 5.]

Section 2610, Revised Statutes 1919, of the article on juvenile courts in question, is the section allowing appeals in such matters. It provides that—

"An appeal shall be allowed . . . from any *final* judgment of delinquency or dependency or *final* order of commitment made under the provisions of this article and from any modification of such order," etc. (Italics ours.)

As heretofore stated there was no judgment of delinquency. Indeed there could be none, since there was no charge and could be none, of delinquency against a nineteen-months old child. Neither was there any judgment of "dependency," the meaning of which may perhaps be defined by the words "dependent upon the public for support," found in section 2591, Revised Statutes 1919, as amended by Laws 1923, p. 154. The only thing the court could and did find with reference to the child was that it was a "neglected" child. Now, the court did make the child a ward of the court, and the only theory upon which the court could take jurisdiction of the child is that it is a neglected child, but it by no means follows that because the court found it was a neglected child, therefore this was followed by a final order of commitment.

Under section 2595, Revised Statutes 1919, as reenacted in Laws 1923, page 155, when any child shall be "found to be neglected," the juvenile court may make an order committing it to the care of some reputable person of good moral character, or to some association or to the proper institution, "or the court may return the child to the parent . . . under the supervision of a probation officer." And this is what the court did, not finally but "pending the hearing of the aforesaid action for divorce." Consequently, there is not, and has not been, any *"final* order of commitment" made in the case from which an appeal could be taken.

It cannot be said that the order as spread upon the record is not the order as made by the first minute entry. It is practically the

same as the second minute entry, but in this proceeding we cannot inquire into what was the entry that was really ordered. We must take the record as it finally stands.

By reference to section 2610, Revised Statutes 1919, it will be observed that an appeal in a proper case can be taken either with or without an appeal bond, but the trial court or the appellate court may dispense with such bond, in which case the mere allowance of the appeal would act a supersedeas. The purpose of relator, therefore, of seeking to have the trial court approve a bond, was evidently with the thought that were this done or were the court to dispense with a bond, the appeal would act as a supersedeas, i. e., result in turning the child over to him, the foster father, relator herein. But the judgment finds that the child was found in the possession of the mother and even if an appeal were allowable and had been allowed and a bond accepted or dispensed with by order, this would not result in turning the child over to the other parent. The only result would have been to leave the status and possession of the child where it was.

The alternative writ was improvidently issued and it should be quashed. It is so ordered. All concur, *Bland, J.*, in result.