State of Missouri ex rel. Marion H. Gregory, Relatrix, v. Mitchell J. Henderson, Judge of Probate Court, Jackson County, Missouri, Respondent.——88 S. W. (2d) 893.

Kansas City Court of Appeals.  November 12, 1935.

2

*James P. Aylward, George V. Aylward, Terence M. O'Brien* and *Dean S. Lesher* for relatrix.

*Cyrus Crane, George J. Mersereau, Thomas E. Deacy* and *Dean Wood* for respondent.

BLAND, J.—This is an original proceeding in mandamus wherein the relatrix seeks to require the respondent, the Probate Judge of Jackson County, to appoint her the sole administratrix of her deceased husband's estate. By an agreement of the parties the Honorable George K. Brasher of the Kansas City Bar was appointed special commissioner to take the testimony and to report to this court his findings of fact and conclusions of law. Thereafter, the commissioner

duly made his report, finding the issues in favor of the relatrix and recommending that a peremptory writ of mandamus be issued. Exceptions were duly filed and the hearing now comes up on those of the respondent.

The material parts of the report of the commissioner read as follows:

"FINDINGS AS TO THE FACTS:

"Your Commissioner finds that the following facts are undisputed:

"Undisputed Facts.

"1. That Riddelle L. Gregory died, intestate, in Kansas City, Missouri, on Sunday, April 14, 1935.

"2. He left surviving him a widow (the Relatrix), Marion H. Gregory, who is twenty-four years of age, and a resident of Kansas City, Missouri. There is no question in this case concerning the validity of the marriage between Relatrix and the deceased. There is no dispute about the fact that she was a resident of Kansas City, Missouri, at the time of the death of her said husband, and there is no dispute about the fact that she has continuously been, since prior to April 14, 1935, a resident of Kansas City, Jackson County, Missouri.

"3. Said Riddelle L. Gregory left surviving him three minor children, two sons and a daughter, all of tender years, and all of whom reside with their mother (the divorced wife of the deceased), in Johnson County, Kansas.

"4. That on April 19, 1935, the Relatrix filed in the Probate Court of Jackson County, Missouri, at Kansas City, in due form, her formal application for her appointment as administratrix of the estate of her deceased husband, and tendered her bond in due form in the penal sum of $100,000.00, and executed by an approved surety, the American Surety Company. It is admitted that the surety tendered thereon was suggested by and was and is agreeable to the Probate Judge, and that the bond is sufficient in every respect.

"5. That Relatrix did not sign or file any written renunciation of her right to be appointed administratrix of her husband's estate.

"6. That Relatrix did not sign or file any written consent to the appointment of any other person as such administrator, unless it may be held that a proposed order prepared by counsel for Relatrix may be said to be a written consent, but it is pertinent at this point to note that that proposed order which is hereinafter more fully referred to was never filed, was never entered of record, and was not signed by any person.

"7. That between April 19, 1935, and April 22, 1935, various discussions were had between the Probate Judge of Jackson County, Missouri, the Respondent herein; the Relatrix; her attorney, Mr.

Dean S. Lesher; John B. Gage, the attorney for the former wife and for the minor children. Some of these discussions were in the chambers; some were in the court room of the Probate Court of said county, and some of them were in the private law office of the Probate Judge in the Scarritt Building in Kansas City, Missouri.

"8. On Monday, April 22, 1935, the Probate Judge of Jackson County, Missouri, announced that he would appoint the relatrix and the Commerce Trust Company as coadministrators of the estate of Riddelle L. Gregory, deceased.

"9. On April 22, 1935, and after the Probate Judge had announced the order that he would make in that matter, the attorney for the Relatrix prepared and handed to the Court a proposed order, which proposed order is attached to the transcript of the testimony and marked 'Exhibit 4'. That order was never signed by the Probate Judge nor by any other person. It bore no signature of any kind and was never entered of record in the Probate Court.

"10. At the time that said Exhibit 4 was presented to the Probate Judge he refused to enter the order in that form but later on, and on the same day, to-wit, Monday, April 22, 1935, the Probate Court did enter an order in that cause reading as follows:

"'In the Probate Court of Jackson County, Missouri,

"'At Kansas City.

"'In the Matter of the Estate of Riddelle L. Gregory,

"'Deceased. No. 41860.

"'Order.

"'Now on this, the 22nd day of April, 1935, being the thirty-fifth day of the February Term, 1935, of the Probate Court of Jackson County, Missouri, it appearing to the Court upon the written application for letters of administration that Riddelle L. Gregory was at the date of his death, to-wit, the 14th day of April, 1935, a resident of Jackson County, Missouri; that he left surviving him a widow to whom he had been married approximately six months and three infant children by a former marriage; and it appearing to the Court that among the assets of his estate there was certain stock in the Postal Life and Casualty Insurance Company, which stock would be in control of said insurance company; and it further appearing to the Court that the widow, not being the mother of the minor children, there might be separate interests to protect in the administration of this estate; and it appearing to the Court that the widow is approximately twenty-four years of age and without particular business experience and that it would be to the best interest of the estate to appoint as administrator of said estate a coadministrator with the widow to administer the estate of said Riddelle L. Gregory.

"'The Court believing that it would be to the best interest of all

parties concerned to appoint the widow and a coadministrator to act with her, does therefore order, adjudge and decree that Marion H. Gregory and the Commerce Trust Company be appointed as coadministrators of the estate of Riddelle L. Gregory; that Dean Lesher be appointed and act as the attorney for Marion H. Gregory and that Honorable Cyrus Crane, in whom the Court has the greatest confidence, be and is hereby appointed to act as counsel for the Commerce Trust Company and that each of these gentlemen act as counsel for the Court in this matter and that bond be fixed herein in the sum of Fifty Thousand Dollars.

" 'M. J. HENDERSON,

"Judge.' "

"11. On Wednesday, April 24, 1935, the petition of Relatrix for mandamus was filed with the Kansas City Court of Appeals.

"12. On April 24, 1935, a written notice was served on the Probate Court of Jackson County, Missouri, advising the Respondent that the Relatrix would present to the Kansas City Court of Appeals her application for a writ of mandamus against the Respondent on April 26, 1935, at three o'clock P. M.

"13. On May 6, 1935, this Court issued its alternative writ of mandamus.

"14. On May 20, 1935, this Court appointed this Commissioner herein.

"15. No application for letters of administration has at any time been filed by any other person than the Relatrix.

"16. No written specifications of objections to the appointment of Relatrix as administratrix of her deceased husband's estate were ever filed by any person at any time.

"17. The order that was made by the Probate Court on April 22, 1935, was made considerably less than thirty-five days after the date of the death of said Riddelle L. Gregory.

"DISPUTED FACTS.

"1. Respondent contends that Relatrix consented to the appointment of a coadministrator, but admits that such consent was not in writing, and was not 'filed' by her in the Probate Court, unless it can be said that the entry presented by the Relatrix' attorney on April 22, 1935, the original of which is attached to the transcript of the testimony and referred to therein as Exhibit 4, is a written consent.

"That entry reads as follows:

" '*In the Probate Court of Jackson County, Missouri,*

" '*At Kansas City.*

" '*In the Matter of the Estate of Riddelle L. Gregory,*

" '*Deceased, No.*

### " 'JOURNAL ENTRY.

" 'Now on this twenty-second day of April, 1935, the application of Marion H. Gregory, widow of Riddell L. Gregory, deceased, for issuance to her of Letters of Administration herein, being duly filed and presented, the Court finds that applicant is a suitable and competent person to so administer, that she is the widow of decedent, that she resides in Jackson County, Missouri, and that decedent was a resident of Jackson County, Missouri, at the time of his death.

" 'It is Therefore Ordered, Adjudged and Decreed by the Court that Marion H. Gregory be, and she is, hereby appointed administratrix herein, and that the Commerce Trust Company, a corporation, be appointed coadministrator herein, and that the bond herein be in and for the sum of one hundred thousand dollars.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

.' 'Probate Judge.'

"Dean S. Lesher testified that he prepared that Exhibit 4 on the order of the Respondent; that it was tendered to the Court not as a consent order, but because he had been instructed by the Court to prepare such an order, and because the Court had informed him that the Court would make that kind of an order. It was not signed by any person and the Probate Judge did not enter the proffered order of record. No such order was ever entered of record in the records of said Probate Court.

"An order was prepared by the Respondent in person and was entered of record in the records of said Probate Court on April 22, 1935, and copy of that record entry is set forth in these findings at page 5.

"2. There is a sharply disputed question of fact as to whether the Relatrix did or did not verbally consent to the appointment of the Commerce Trust Company as coadministrator of her deceased husband's estate, the testimony on that point being substantially as follows:

"Three and only three witnesses testified on that point, they being the Respondent, Probate Judge Henderson, the Relatrix, Marion H. Gregory, and the attorney for the Relatrix, Dean S. Lesher. All three of the witnesses agree that the conversation in question occurred in the private law office of Judge Henderson in the Scarritt Building on Friday, April 19, 1935. All three witnesses agree that those three persons were the only persons present at that time.

"Judge Henderson states, when he informed the Relatrix that he would appoint the Commerce Trust Company as coadministrator: 'It was perfectly agreeable, there was not one single word or line of dissension about it, not a one.'

"The Relatrix testified that 'I did not want a coadministrator and

that in particular I didn't want the Commerce Trust Company;' and also in response to the question: 'After that did you make any objections to the appointment of a coadministrator,' the Relatrix testified: 'Yes, I said that I didn't want a coadministrator at all.'

"There are numerous other places shown in the transcript of the testimony where the Relatrix categorically denies that she did consent to the appointment of any coadministrator.

"Mr. Dean S. Lesher, counsel for Relatrix, testified in response to the question: 'Did you or Mrs. Gregory consent to the appointment of a coadministrator?' as follows: 'No. At that time, as a matter of fact, throughout the discussion, we told him (meaning the Respondent) that we did not want a coadministrator.' And at page 186 of the record Mr. Lesher testified that the Relatrix told Respondent that she, the Relatrix, did not want any coadministrator appointed and particularly did not want the Commerce Trust Company appointed.

"Your Commissioner respectfully reports to this Court that it is his opinion that the undisputed facts shown by the record of the testimony in this case are decisive of the law and are controlling upon this Court in its decision herein, and your Commissioner is of the further opinion that the disputed questions of fact have no bearing upon the result to be reached by this Court.

"The undisputed facts show that on the 14th day of April, 1935, One Riddelle L. Gregory, while a resident of Kansas City, Jackson County, Missouri, died intestate, leaving surviving him the Relatrix, his widow, who was and is also a resident of Kansas City, Jackson County, Missouri, and leaving surviving him three minor children, said children all being residents of Johnson County, Kansas; that five days after the date of the death of said Riddelle L. Gregory, the Relatrix duly filed in due form in the Probate Court of Jackson County, Missouri, at Kansas City, her application for the appointment of herself as administratrix of her deceased husband's estate, and simultaneously therewith tendered to said Probate Court a bond in due form in the amount of $100,000.00, executed by a surety company suggested by and satisfactory to said Probate Court; that Relatrix did not at any time sign or file any written renunciation of her right to be appointed administratrix of her deceased husband's estate, nor did she sign or file any written instrument of any kind consenting to the appointment of any other person as a coadministrator of said estate.

"It is admitted by all of the parties that the Relatrix was on April 19, 1935, and now is a resident of Jackson County, Missouri; that she is more than twenty-one years of age, and that she is the widow of said Riddelle L. Gregory.

"It is further admitted that the Respondent did appoint the Commerce Trust Company as coadministrator of said estate on the 22nd day of April, 1935, and within considerably less than thirty-five days after the date of the death of said Riddelle L. Gregory.

"There is no dispute about the fact that no written objections of any kind were filed in said Probate Court objecting to or protesting against the appointment of said Relatrix as such administratrix.

"Your Commissioner finds that the appointment of the Commerce Trust Company as coadministrator of the estate of Riddelle L. Gregory, deceased, was not consented to in writing by the Relatrix and that it evidently was and at all times has been highly objectionable to the Relatrix.

"Your Commissioner further finds that no other person has at any time filed any application for letters of administration on the estate of the said Riddelle L. Gregory, deceased; that no application was at any time filed by or on behalf of said Commerce Trust Company.

"There may be some other incidental findings of fact necessary to a decision in this matter, and, if so, such findings of fact will be set forth in connection with the conclusions of law hereinafter set forth herein by your Commissioner.

## "CONCLUSIONS OF LAW.

"In his return Respondent contends that no demand has been made by the Relatrix upon the Respondent for the revocation of the letters of administration granted to the Commerce Trust Company and that the alleged consent of the Relatrix to the order appointing a coadministrator has never been withdrawn, and that no motion, application or petition to review, set aside or annul the Probate Court's order has ever been made in the manner provided by the statutes; that Relatrix' petition does not seek to require the Respondent to act, but, on the contrary, attempts to control and regulate his action, and thereby deprives Respondent of the judgment, discretion and power vested in him by the statutes, and in his brief Respondent claims that the Respondent expressly found that the Relatrix was not qualified to act as sole administratrix, and that Relatrix is estopped from seeking the aid of mandamus; that Relatrix has waived her priority of right to administer under Section 9, R. S. Mo. 1929.

"Section 7, R. S. Mo. 1929, provides as follows:

" 'LETTERS OF ADMINISTRATION SHALL BE GRANTED: First, to the husband or wife; secondly, to those who are entitled to distribution of the estate, or one or more of them, as the court or judge or clerk in vacation shall believe will best manage and pre-serve the estate: Provided, however, if the court or judge in vacation, should believe no one of such persons entitled to administer is a com-

petent and suitable person, some other person than those above mentioned may be appointed.' ''

"Section 8, R. S. Mo. 1929, provides:

" 'If no such person apply for letters within thirty days after the death of the deceased, the court or judge or clerk may issue citation to him or them, on motion of any person interested, to appear and qualify for administration, giving at least five days' time for that purpose; and if the person or persons so cited fail to administer within the time appointed, letters may be granted to any person whom the court or judge or clerk in vacation may deem most suitable.' ''

"Section 9, R. S. Mo. 1929, provides as follows:

" 'Letters testamentary and of administration may at any time be granted to any person deemed suitable, if the person or persons entitled to preference *file* their renunciation thereof, in writing, with the clerk of the court, or if proof be made that no such persons reside in this state.' ''

"The law is well settled in this state that probate courts are courts of limited jurisdiction and that they possess only such powers as are conferred on them by statute, and can exercise their jurisdiction only in the manner prescribed by statute.

"In *Peck v. Fillingham's Estate*, 199 Mo. App. 277, 202 S. W. 465, the St. Louis Court of Appeals states:

" 'It is a well settled rule in this state that our probate courts have no inherent powers, their powers being entirely derivative, and exercise such only as are conferred by or implied from legislation, though it is true that in those matters over which they have jurisdiction they are courts of vast powers. And while these courts, in administering justice in proceedings over which they have jurisdiction, may apply equitable and also common-law principles in reaching their conclusions, yet they have no common-law or chancery jurisdiction.' ''

"In the case of *City of St. Louis v. Hollrah*, 175 Mo. 79, 74 S. W. 996, the Supreme Court, speaking through Justice BRACE, said:

" 'The probate court is a court of limited jurisdiction, possesses only such power as is conferred upon it by statute, and can exercise its jurisdiction only in the manner prescribed by statute.' ''

"In the case of *State ex rel. Baker v. Bird*, 253 Mo. 569, 162 S. W. 119, the Supreme Court, speaking through Justice BROWN, said:

" 'We find no attempt has been made, in either the constitution or statutes, to grant general chancery powers to probate courts, and think it must be conceded that such courts possess only the powers granted to them by constitution and statutes, together with such implied powers as are necessary to effectuate those expressly granted. There have been numerous rulings by the appellate courts of Missouri

to the effect that probate courts possess no equitable jurisdiction at all.' ' '

"Since it is admitted that the Relatrix is the widow of Riddelle L. Gregory, that she is a resident of Jackson County, Missouri; that she is more than twenty-one years of age, and that he died intestate, your Commissioner finds that under the provisions of Section 7, R. S. Mo. 1929, she has the absolute right to be appointed sole administratrix of her deceased husband's estate, unless the Probate Court should believe that she was not a competent and suitable person for that purpose.

"Under the decisions of this Court in the case of *State ex rel. Fansher v. Guinotte*, 227 Mo. App. 902, 58 S. W. (2d) 1005, this Court, speaking through Judge BLAND, held (l. c. 1007-1008):

"'We find nothing in the statute authorizing the judge to appoint a coadministrator where the person or persons given priority by the statute are found by him to be not competent and suitable persons, but on the other hand, Section 7 expressly provides that if such a person or persons are found not to be competent and suitable some other person may be appointed in *their stead*, not that he or they should be appointed together with someone else. As before stated, the statute must be strictly followed in making appointments of this kind. The statute, substantially in express language, forbids the appointment, even as coadministrator, of a person who is not competent and suitable to act as administrator in any capacity, and it would seem that this would be the logical method to pursue, as, if one is not a competent and suitable person to serve alone, he is not competent and suitable to serve with another.' ''

"That decision further holds that the right to administer upon an estate is a valuable one, and one that cannot be denied to the person given priority without his consent, and that decision further holds that when a person is entitled to serve as administrator, the appointment of another as a joint administrator, in effect, withdraws that right to a degree for the other, in many instances in the course of the administration of the estate, could practically veto the action of the party entitled to serve.

"That decision further holds that the appointment of Eva C. Fansher as a coadministrator was a judicial determination on the part of the probate judge that she was a competent and suitable person to serve, and that the probate court, having judicially determined that Eva C. Fansher was a competent and suitable person to act as administratrix, therefore the probate court had no discretion except to appoint her as sole administratrix, and that the appointment of the coadministrator in that case was absolutely void.

"Your Commissioner holds that the decision of this Court in the

case of State ex rel. Fansher v. Guinotte, is controlling in this case, and that since the Respondent in this case did appoint the Relatrix as coadministratrix, that appointment is a judicial determination on the part of the Respondent in this case that the Relatrix was a competent and suitable person to serve, and that having so found, the Respondent had no discretion except to appoint her as sole administratrix, and that the appointment of the Commerce Trust Company as coadministrator in this case is absolutely void.·

"Your Commissioner further finds that the appointment of the Commerce Trust Company in the case at bar as coadministrator was in effect a refusal by the Respondent to grant the application of Relatrix for her sole appointment as administratrix of her deceased husband's estate, and that under such circumstances she had the right to apply to this court for a writ of mandamus. [State ex rel. Fansher v. Guinotte, 227 Mo. App. 902, 58 S. W. (2d) 1005.]

"As to the question of whether or not the Relatrix in the case at bar has waived her right to serve as sole administratrix, the Commissioner finds that the law in this state is that any renunciation or waiver of such right must be in *writing* and *must be filed* with the clerk of the probate court. No. such written renunciation was filed in this case. No written consent to the appointment of a coadministrator was filed in this case.

"In the case of Hardin v. Howard, In re Graves' Estate, 73 S. W. (2d) 844, l. c. 847, the Springfield Court of Appeals, speaking through Justice SMITH says:

" 'It is a fact that she did not waive *in writing* any rights she may have had, and she did not in writing request Bishop's appointment.

" 'We think under the provisions of Sections 7, 8 and 9 of the Revised Statutes of Missouri, 1929, and under the uncontroverted facts in this case, the probate judge had no right to appoint M. Bishop as administrator of this estate, because this appointment was made within four days of the death of Rosa B. Graves, and because said M. Bishop was a stranger to the deceased and not interested in the estate. Because of such conditions his appointment was void.' "

"In the case of Pikey v. Riles, 223 Mo. App. 921, 20 S. W. (2d) 550, the Springfield Court of Appeals, speaking through Justice SMITH, says:

" 'Therefore, since B. F. Pikey's appointment as administrator was made within the 30-day limit fixed by the statute, and since those entitled to preference in the administration of the estate had not waived that right by filing their waiver in the Probate Court of New Madrid County, it follows that the probate court of that county exceeded its authority in appointing B. F. Pikey as administrator, and his appointment was null and void.' "

"The authorities above quoted expressly hold that the waiver of the right to administer must be *in writing* and *must be filed* in the probate court. There is no doubt but that in the case at bar no written renunciation of the right to administer was ever filed by the Relatrix and no written consent to the appointment of a coadministrator was ever filed in this case by the Relatrix.

"It is also undisputed that in the case at bar the Respondent did appoint the Commerce Trust Company as coadministrator within considerable less than thirty days after the date of the death of the husband of Relatrix.

"In the case of *State ex rel. Thompson v. Nortoni*, 269 Mo. 563, 191 S. W. 429, the court, speaking through Justice GRAVES, holds that the absolute right to administer upon an estate may be waived, but in that case, there was a written contract made prior to the marriage, the legal effect of which waived all of the widow's marital rights in her husband's estate, and in that case the probate court made a judicial finding that the widow had waived her absolute right to administer, and that that waiver was in writing, but the court also held, 1. c. 432, that:

" 'If the return in the mandamus case had only disclosed a refusal to appoint the widow, without the showing of an adjudication upon the question of the waiver, a different situation might prevail.' "

"And since the case of *Pikey v. Riles*, 223 Mo. App. 921, 20 S. W. (2d) 550, and in *Re Graves' Estate*, 73 S. W. (2d) 844, hold in effect that the waiver must be in writing, as is also held in the case of *Hollingsworth v. Jeffries*, 121 Mo. App. 660, 97 S. W. 632, 1. c. 634, your Commissioner is of the opinion there was no question of waiver or renunciation involved.

" 'It is urged by appellant here that the proviso added in 1917 (Laws 1917, p. 93) to Section 7, to the effect that 'if the court, or judge in vacation, should believe no one of such persons entitled to administer is a competent and suitable person, some other person than those above mentioned may be appointed,' was intended to enable the probate court, in such cases, to act immediately and not be required to wait 30 days after the death of the deceased, as provided by Section 8. This contention is untenable. In the *Allen case, supra,* it was held that said proviso to Section 7 merely relieved the court of the necessity, which previously existed, of appointing those who under Section 7 were entitled to preference, but that the amendment does not purport to fix the time when such person shall be appointed, and that Section 8 is in this respect not affected thereby.

. . . . .

" 'Sections 7, 8 and 9, Rev. Stat. of Mo. 1919, prescribing who shall be entitled to administer upon the estate of a decedent, and fixing the conditions upon which other persons may be appointed as

administrators, are mandatory. The probate court has no jurisdiction to appoint an administrator in violation of their terms and where, as here, the record of the proceedings for the appointment of an administrator shows on its face a failure to comply with the requirements of the statutes, the judgment appointing the administrator is void.' ''

"In the case of Linder v. Burns, 243 S. W. 361, the St. Louis Court of Appeals, speaking through Justice DAUES, holds:

" 'If husband or wife residing in this state survives the decedent, he or she has the prior right to administer. There being no husband or wife, it is within the province of the probate court to say which of the persons entitled to distribution will best manage and preserve the estate, but the selection must be made from this class of persons if it exists in this state, for the right to administer may be lost only in the manner provided in Sections 8 and 9, supra. The law fixes the order of priority, and the probate court cannot in the exercise of discretion deviate from that order. State ex rel. v. Fowler, 108 Mo. 465; State ex rel. v. Guinotte, 113 Mo. App. 399. (In the latter case we said: "The law fixes the order of *priority and the court can be compelled to follow it by a* writ of mandamus," but in the report of the case the italicized words were omitted by mistake.) Plaintiff, the only heir of the decedent who resided in this state, had the prior right to administer on the property of the estate found therein. He did not renounce his right *in writing*, nor was he cited to appear and qualify as administrator. Neither the fact that he failed to appear voluntarily before the Probate Court of Schuyler County and apply for letters of administration, nor the fact that his existence was unknown to the probate court or public administrator, is made a statutory ground for depriving him of his right to administer.' ''

"In that case the court further holds:

" 'In State v. Fowler, 108 Mo. loc. cit. 470, 18 S. W. loc. cit. 969, Judge BLACK uses this language:

" 'It will be seen that the statute determines the order in which interested persons shall have the right to administer. There being no husband or wife, or he or she renouncing his or her right to administer, the law wisely leaves it to the probate court to say which of the persons entitled to distribution will best manage and preserve the estate. This matter of selecting an administrator is left to the judgment and discretion of the probate court; hence, no appeal is provided for from an order appointing an administrator. It may be said that, if there is no appeal from such an order, then the probate court may disregard the order of priority pointed out by the statute. *The answer is that the court has no discretion in that matter. The*

*law fixes the order of priority, and the court can be compelled to follow it by the writ of mandamus.'"*

"In this case the Respondent contends that the order appointing the administrator in this case was made at the February Term, 1935, of the Probate Court, and that the February, 1935 Term expired on May 20, 1935, and before the petition for mandamus was filed in this Court, and that it is now too late for Relatrix to make her attack upon that order. The case of Linder v. Burns, 243 S. W. 361, l. c. 364, has this to say on that point:

" 'However, it is contended by learned counsel for respondent that this attack is too late, having been made subsequent to the term at which the appointment was made, and that, therefore, it is a collateral attack, and under the law the jurisdiction of the probate court to appoint an administrator cannot be questioned in a collateral proceeding and relies chiefly upon the cases of Smith v. Young, 136 Mo. App. 65, 117 S. W. 628, and In re Estate of Davison, 100 Mo. App. 263, 73 S. W. 373.

" 'The decisions are not entirely in harmony as to whether a proceeding instituted at a subsequent term of the probate court in which the administrator was appointed is a collateral attack.

" 'In the Davison case, supra, 100 Mo. App. loc. cit. 268, 73 S. W. loc. cit. 374, this court, in an opinion by Judge GOODE, held that the granting of letters of administration cannot be set aside except in a direct proceeding for that purpose, but that such attack must be made by application to the same probate court in which the letters of administration were granted. The opinion employs this language:

" ' "These considerations have gradually established the rule in most states that the administration 'first granted is collaterally unassailable and can only be vacated by a direct proceeding; that is, by an application to the court which granted it to set it aside. [Woerner's Administration Law (2 Ed.), p. 204, and cases cited.]" ' '"

" 'However, that may be, we must not lose sight of the fact that in the instant case the record itself discloses that in the application filed by Burns to the probate court for appointment as administrator it was set out that Albert Linder, a son of the deceased, resided in the State of Missouri at the time. The written request of Frank Linder to appoint Burns set out such facts. It does not appear that citation had been issued to Albert Linder, a son, who resided in the State of Missouri. On the contrary, it is conceded that (there) was no such citation. It also appears that no renunciation *in writing* was *filed* in the court signed by the resident heir. No issue was raised at any time as to Albert Linder's fitness to serve as administrator. It appears, therefore, that from the record itself the probate court was without jurisdiction to appoint the respondent administrator of said estate.

" 'And it is not necessary to cite authorities to the effect that where the record affirmatively shows that the court was without jurisdiction to appoint an administrator such appointment and judgment is void. The case of Smith v. Young, supra, so strongly relied upon by respondent, makes plain that in such case such appointment may be assailed at any time, and that under such circumstances the judgment is void.' "

"A number of authorities have been submitted in the briefs of both Relatrix and Respondent and your Commissioner has read every one of the authorities cited. I do not deem it necessary, however, to dwell at any great length upon all of the cases cited. Respondent cites the case of State ex rel. Lyons v. Bank, 174 Mo.·App. 589, 163 S. W. 945, which holds that the court is not bound to take the case as the relator presents it, but may consider the defendant's rights, the interests of third parties, the importance or unimportance of the case, and the applicant's conduct in determining whether or not the writ shall go. And that in some cases it is held that even where a clear *prima facie* right to the writ of mandamus is shown, it may be refused, and that cases may, therefore, arise where the applicant for relief has an undoubted legal right for which mandamus is the appropriate remedy, but where the court may, in the exercise of wise judicial discretion, still refuse the relief. And that the .writ may be refused if it operates harshly or where third parties not before the court may be injuriously affected thereby.

"In this instance, your Commissioner has not taken the case as presented by the Relatrix, but has heard all of the evidence tendered by the Respondent and also by the Relatrix, but your Commissioner finds that there is a substantial interest involved in the case at bar, and your Commissioner finds that the Respondent has no discretion in the matter of her appointment under the statutes, if the Relatrix is qualified, and that under the holding of this court in the case of State ex rel. Fansher v. Guinotte, 58 S. W. (2d) 1005, the Respondent, by appointing Relatrix as coadministratrix, did judicially determine that she was a suitable and a competent person to so act.

"And your Commissioner further finds that the order made by the Respondent on April 22, 1935, in the case at bar, was void on its face.

"The further contention is raised by the Respondent in his brief that he has not yet held a hearing to determine the competency and suitability of the Relatrix to serve as administratrix of her deceased husband's estate. Your Commissioner has diligently searched the authorities in this state on that question and has only been able to find one case which sets forth the procedure to be followed by the Probate Court in passing upon the competency and suitability of applicant for letters of administration. That is the case of Stevens v.

Larwill, 110 Mo. App. 140, 84 S. W. 113, 1. c. 117, where the Kansas City Court of Appeals, speaking through Justice SMITH, holds:

" 'The statute nowhere provides for any trial or hearing to determine the qualifications of an applicant for letters of administration to properly manage the estate. The matter is left wholly within the discretion of the probate court, with the power to remove him if found to be unqualified.'

"Therefore, your Commissioner finds that as a matter of law, the Respondent did hold a hearing within the purview of the statutes, and by his order of April 22, 1935, appointing the Relatrix as coadministratrix, did find that she was a suitable and competent person and cannot now deny that she is a competent and suitable person to act as sole administratrix of her deceased husband's estate.

"Your Commissioner, therefore, recommends to this Honorable Court that the prayer of the petition of Relatrix be granted and that this Court issue its peremptory writ of mandamus against Respondent, commanding said Respondent to revoke the appointment of the Commerce Trust Company as coadministrator, and to revoke such other parts of said order of April 22, 1935, as relate to the appointment of said Commerce Trust Company as coadministrator and as relate to the appointment of Cyrus Crane as attorney for said Commerce Trust Company, and to enter its order, appointing the Relatrix as sole administratrix of her deceased husband's estate."

It is insisted by the respondent that:

"The Commissioner erred in ruling that the case of State ex rel. Fansher v. Guinotte, 227 Mo. App. 902, 58 S. W. (2d) 1005 (K. C. Court of Appeals), is controlling in this case for the reason: (1) That the order of coadministration in that case did not bear on its face findings of fact showing the disqualifications of the relatrix to administer alone, as does the order in the instant case: (2) That the evidence in that case did not show estoppel by consent of the relatrix and counsel to the making of the order of coadministration, as does the evidence in this case, and in that case there was no evidence of estoppel that the relatrix and counsel prevented the respondent judge from carrying out his expressed intention of setting aside the order during the term, and (3) That there was no evidence in that case that the interests of third persons would be unfairly prejudiced by issuing the writ of mandamus, while the evidence in the instant case shows the livelihood and education of three minor children between the ages of twelve and four years would be endangered by the issuance of the writ appointing relatrix sole administratrix."

The contention that the order in the case at bar bears on its face findings of fact showing disqualification of the relatrix to administer, alone, cannot be sustained. We held in the Fansher case that the probate court has no power to appoint a coadministrator upon a find-

ing that the person or persons given priority by Section 7, Revised Statutes 1929, are incompetent and unsuitable to administer; but it is the duty of the court upon so finding to appoint some other person than the one so disqualified and that a general order appointing some other person to administer along with the person given priority by the statute is a finding, on its face, ·that the latter is a competent and suitable person to administer the estate and, having so found, the court could not do otherwise than appoint such person sole administrator.

The contention of the respondent that the order of the court, in .the case at bar, on its face, shows that the court found the relatrix incompetent· and unsuitable to serve as sole administratrix of her deceased husband's estate is the equivalent to an attack upon the validity of the order, itself, because, if the order could be so construed relator had no power to appoint her administratrix at all. Therefore, the act of appointment, as a matter of law, shows that he considered her a competent and suitable person to administer.

Whether respondent ought to be· heard to make a contention of this kind in this court we need not say for, even giving every consideration to it, unless the order is so contradictory and its provisions so self-destructive that it is void upon its face, it should be given effect. [Freeman on Judgments, p. 642.] As before stated, the very appointment of the. relatrix as coadministrator is a finding that she was a competent and suitable person to serve alone. However, if the *findings* of the court upon which the order was issued do not support it but, in legal effect, constitute a finding that she was not a competent and suitable person to serve, alone, then, no doubt the judgment appointing her is void on its face. At least we can so assume.

The findings of the court, upon which the order was based, which were apparently made to justify the appointment of the Commerce Trust Company as coadministrator, may, be said to consist of two: (1) That the relatrix was not the sole beneficiary of the estate but that there were minor children of the deceased by a former wife, whose interests were to be protected: (2) The youth and inexperience in business affairs of the relatrix. Do such matters necessarily disqualify the widow from administering? The statute, itself, provides for those disqualifications that are such as a matter of law. These disqualifications are contained in Section 7, which provides:

"No judge or clerk of any probate court in his own county, or his deputy, and no male or female person under twenty-one years of age, or of unsound mind, shall be executor or administrator. No executor of an executor, in consequence thereof, shall be executor of the first testator."

Subject to these disqualifications the probate court exercises a wise discretion in. determining the persons who are suitable and competent

to administer the estate. Such discretion, unless abused, is not reviewable by any court. [State ex rel. v. Martin, 26 S. W. (2d) 834.] Therefore, it is not proper for this court in this proceeding to determine whether the findings in this case disqualified the relatrix, whom the statute gives preference in the appointment of an administrator, unless the findings upon their face and, as a matter of law, do not support the judgment of the court.

We may say in this connection that the first finding contained in the order to the effect that there are other persons interested in the estate, whose interests were to be protected, is not only not a disqualification as a matter of fact but as a matter of law. Perhaps in a majority of estates the widow is not the sole beneficiary and it would be most unusual to disqualify her on the ground that others were also interested in the estate. If this were a disqualification, then no person interested in the estate where there is also another would be qualified to serve. Such would not be in harmony with the statute, for it provides: (Section 7) That if the husband or wife is not a suitable and competent person to serve then "those who are entitled to a *distribution* of the estate, or one or more of them" shall be appointed, provided, of course, that such person is a competent and suitable person. ·

As to the second finding of the court in reference to the qualifications of the relatrix, to-wit: That she was but twenty-four years of age and without particular business experience, a somewhat different situation arises. However, we might say if a lack of business experience is a disqualification for a widow to serve as her husband's administratrix then, perhaps, the great majority of widows would not be competent. But cases may be imagined, such as the order discloses in this case, where a part of the estate consists of a controlling interest in the stock in a life insurance company, which company, we may assume, requires special training to operate. In such a case it ought to be within the discretion of the probate judge to disqualify a widow who is but twenty-four years of age and without particular business experience. However, the statute (Section 7) Revised Statutes 1929, requires a finding upon the part of the court that the person having prior right to administer the estate be not a competent or suitable person before it can disqualify such person. Such a finding should be clear and unequivocable. No such finding was made in the case at bar but, on the contrary, the judgment of the court appointing the relatrix as administratrix is, in effect, a finding that she was, notwithstanding her youth and lack of business experience, a competent and suitable person to administer the estate. It is not within the province of this court to say that, even though the relatrix was only twenty-four years of age and without particular business experience, she was not a competent and suitable person to serve in the

face of the judgment of the court to the contrary, especially in view of the fact that the probate courts control the acts of the administrators they appoint. There is, therefore, no necessary inconsistency between the appointment of the relatrix as coadministratrix, thus finding her a suitable and competent person to serve as sole administratrix, and a finding that she is but twenty-four years of age and without particular business experience.

If we look to nothing but the face of the order we find there that the court was of the opinion that it was within its power to determine what would be to the best interest of the estate in this matter. The statute does not so provide. No doubt, from a purely material or financial viewpoint, it would be to the best interest of any estate, where it is found that the widow is a young person of no particular business experience and where the administration of the estate involves particular business experience, if the widow be appointed at all, that some person or corporation, having the required experience, or being experienced in matters of business and finance, should be appointed, as coadministrator with the widow. The order of the respondent in this instance, upon its face shows, from this standpoint, a high minded and commendable effort to protect the financial interest of the estate in the light of his findings in the matter (and we may say that we find the parol evidence tends to show the same conclusion). But the statute evinces a somewhat different consideration than financial matters alone and indicates that, even though those given priority in the matter of the appointment as administrator may not be so skilled in business affairs as some other that the court might find in the community, such as a large and successful trust company, yet, the law does not deem it in the best interest of all concerned to inflict an outsider upon the widow and others entitled to preference, unless she and they are *wholly* incompetent and unsuitable to administer the estate. The probate court, regardless of any altruistic motive that may actuate its conduct in making the appointment, has no power to act in contravention of the statute, even though the statute may be unwise in its provisions. (A question we do not pass upon as it is not within the province of the courts so to do.)

The findings of the court, upon which the order making the appointment was based, not being such as to fail in any respect, to support the judgment appointing relatrix, and not being inconsistent with or contradictory to the judgment, itself, we are of the opinion that no distinction can be made between this case and the Fansher case, as far as the record, upon its face, is concerned.

However, it is claimed that the evidence in the case at bar shows estoppel by the consent of the relatrix to the making of the order appointing the coadministrator, in that she and her counsel consented to such appointment thus avoiding a hearing on the question of her

competency and suitability, which hearing was being demanded by the attorney of the former wife and minor heirs. The evidence in this respect shows that the attorney for the first wife and the mother of the minor children, in question, was unwilling for the relatrix to serve as the sole administratrix of her husband's estate; that his objection was based upon the ground that she was incompetent and unsuitable, so to do; that, while he was unwilling that she be appointed sole administratrix it was agreeable to him, if she consented, that a suitable coadministrator should be selected. Upon being advised by the court that the Commerce Trust Company would be appointed coadministrator and that relatrix and her counsel had consented to the appointment, the disposition of the matter was satisfactory to him. However, the evidence shows that, unless the relatrix consented to the appointment of the coadministrator, it was his intention to contest the right of the relatrix to serve as sole administratrix and that he would have contested her right had not the court advised him that the matter had been settled by an agreement which was satisfactory to the attorney.

There was evidence on the part of the respondent that the relatrix and her attorney did consent to the appointment of the Commerce Trust Company as coadministrator. This was denied by relatrix and her attorney. (See the report of the Commissioner.) It was admitted by them, however, that (for reasons not necessary here to set forth) respondent was insisting upon the appointment of the Commerce Trust Company as coadministrator but that they at all times objected to and resisted the appointment of any coadministrator and that they objected to the appointment of the Commerce Trust Company as such.

The commissioner found that it was unnecessary to determine the dispute in question and, while the finding of the commissioner is only advisory in our determination of this case, we agree with him in this respect though we desire to give our own reasons for so doing. The testimony concerning consent was objected to by relatrix in the hearing before the commissioner and we think that it was clearly incompetent. It was an effort to change, in effect, the order of the court in making the appointment. Nothing is better settled than that a court can speak only through its records. They may not be impeached, contradicted or enlarged in a collateral proceeding by parol evidence (mandamus being a collateral proceeding). [State ex rel. v. Ross, 118 Mo. 23, 44; State ex rel. v. Grinstead, 314 Mo. 55; Cunio v. Franklin County, 315 Mo. 405, 408, 409; In re Lydia Sisk, 305 Mo. 328; State ex rel. v. Porterfield, 258 S. W. 722; State ex rel. v. Bagby, 288 Mo. 482, 488; Freeman on Judgments, p. 273.]

It will be noted that the order upon its face does not purport to be a consent judgment but it contains recitations which purport to be

reasons why the court thought that a coadministrator was proper. There is no claim that the relatrix, or her counsel, consented to the recitations contained in the order, but, merely, that they agreed that a coadministrator, the Commerce Trust Company, might be appointed coadministrator. The order contains on its face the findings of the court upon which the order was based. As before indicated, there is no ambiguity or uncertainty apparent on the face of the record. Under such circumstances, it is not permissible, in a collateral proceeding, to show that the judgment was based upon any findings except those contained in the record for to do so would be permitting a party to vary the recitations of the record. "Parol proof can be given to show the grounds of a judgment only when such grounds do not appear from the record itself." [2 Freeman on Judgments (5 Ed.), p. 1626; Briggs v. Wells, 12 Barbour, 567; Taylor v. Taylor, 54 Ore. 560, 571; Brown v. Fletcher, 182 Fed. 963, 983; Blue Mt. Iron & Steel Co. v. Portner, 131 Fed. 57; Forsyth v. Vehmeyer, 75 Ill. App. 308; Legg v. Legg, 8 Mass. 98, 100; Wilson v. Wilson, 45 Calif. 399, 405; 22 C. J., pp. 1077, 1078, 1079.]

We have examined the cases cited by the respondent and find them not in point. In the case of Snodgrass v. Moore, 30 Mo. App. 232, there was a *general finding* and parol evidence was held to be admissible which tended to show upon what ground the judgment was rendered. In West v. Moser, 49 Mo. App. 201, the court said, l. c. 206, 207: "Where the record does not distinctly show what was adjudicated in the prior action, this may be proved by parol," but "where it is positive and distinct in the recitations it cannot be contradicted." In the case at bar the order shows what was adjudicated and the ground upon which the judgment was based.

In the case of Mareck v. Minn. Trust Co. (Minn.), 77 N. W. 428, parol evidence was permitted to be introduced in order to explain the record but it did not contradict the record. It was related to it but not strictly a part of the main thing or matter under consideration when the judgment was rendered. It was not a matter that was required to come to the attention of the court in the trial of the case or in rendering the judgment. A matter as to the operation of the judgment was presented but no question arose as to the propriety of its entry. The same may be said of Knapp v. Gray, 239 S. W. 757, and the other cases on this point cited by the respondent.

It is insisted that the order on its face contains sufficient from which the probate court could correct the order *nunc pro tunc* so as to show that relatrix had been found to be not a competent and suitable person to serve alone. But in this connection it is again urged that a proper interpretation of the order shows that relatrix was adjudged not competent and suitable to serve by herself. From what

we have said there is no merit in the contention. Assuming that such a question can properly be injected into this character of proceeding, there was no mistake in entering the order. The judge drew it himself and there is nothing to amend by excepting the order itself. [See Shepard v. Tinsley, 149 Mo. App. 428; State ex rel. v. Hartman, 51 S. W. (2d) 22, 25, 26; Burnside v. Wand, 170 Mo. 531.]

We have not discussed the question as to whether a judge may base a judgment by consent upon conversations had outside of the court room (on this question see Thorn v. Hamilton, 149 Iowa, 214, 219, 220, 221), or whether a widow can consent to a coadministrator either verbally or in writing.

Likewise we have not discussed the question as to whether the relatrix could have renunciated her right to act as sole administratrix of the estate by a *parol agreement* for a coadministrator as related to the provisions of Section 9, Revised Statutes 1929, which reads as follows:

"Letters testamentary and of administration may at any time be granted to any person deemed suitable, if the person or persons entitled to preference file their renunciation thereof, in writing, with the clerk of the court, or if proof be made that no such persons reside in this state."

We have not gone into this subject for the reason that there seems to be a conflict between the Supreme Court, on the one hand, and the three courts of appeals of this State, on the other, as to the effect of this statute. [In re Graves' Estate, 73 S. W. (2d) 844, 847; Pikey v. Riles, 223 Mo. App. 921, 925; Hollingsworth v. Jeffries, 121 Mo. App. 660, 667; In re Wilson Estate, 16 S. W. (2d) 737; Lyon v. Lyon, 12 S. W. (2d) 768, 769; State ex rel. v. Holtcamp, 267 Mo. 412; State ex rel. v. Nortoni, 269 Mo. 563.]

The Supreme Court in the two cases last cited held that renunciation may be shown either expressly or by acts of conduct *in pais*. However, those cases hold that whether there has been a waiver by acts and conduct is a question solely for the determination of the probate court (see State ex rel. v. Nortoni, supra, 1. c. 572), and it would seem, from those cases, that, in order that there be any such question presented in a given case, the probate court must make an express order concerning the matter. However, we need not go into this question, for the reason that we have already decided that in the face of the recitals of the order in this case making the appointment it cannot be varied by a showing that it was made not only for the reasons stated in the order but on some other ground, which ground would deprive relatrix of a valuable right which the order upon its face gives her. [See Wilson v. Wilson, supra.]

However, respondent insists that the evidence showing her consent to the appointment of the Commerce Trust Company as coadministra-

tor is "Evidence of Estoppel, showing Relatrix not to be entitled to the relief of mandamus, (and) is based on her conduct as a party, and not on the court proceedings, and consequently, is not based on a matter properly of record, since her conduct as a party is not entitled to be made of record and does not bear the dignity of matters of record." In this connection it is said: "The law is well settled that the rule against collateral impeachments is now applicable to matters not properly of record. [22 C. J., Evidence, sec. 907, page 797, Note 54.]"

However, the law is equally well settled that matters not properly of record cannot be used to impeach the record (see cases cited, supra, on this point).

Going further into the claim of estoppel, for the purpose of determining this point we may *assume* that she did, in fact, agree to the appointment of the coadministrator.

It is said that relatrix is estopped by her consent because it caused the attorney for the respondent and the minor heirs to not insist upon a hearing as to her competency to act as sole administratrix. In this connection there was evidence tending to show that respondent called relatrix' counsel to his office the day after making the order and told him that he had learned that he was not going to stand by the order and that unless relatrix appeared before him the next morning and agreed to the judgment he would make an order finding her incompetent; relatrix' counsel assured him that everything was all right, but relatrix and her counsel filed an application for mandamus in this court the next morning.

In this respect the case is very much like that of State ex rel. v. Grinstead, supra. In that case relator filed a mandamus action in the Supreme Court requiring the county court to pay $8000 in back salary alleged to be due him as prosecuting attorney of Johnson County. Respondents, the judges of the county court, urged the defense of estoppel by reason of an alleged oral agreement that relator would waive his claim in turn for an employment by the county to defend two cases against the county. The records of the county court showed that the employment to defend the two cases was for a consideration of $250 to be paid relator but nothing concerning a waiver of the payment of his salary. The return set out that relator stated to the county court at the time that he was employed in the two cases that he would accept the employment and not collect or attempt to collect his salary. Relying upon such statements and promises the court agreed to pay him $250 for his services in the two cases. There was evidence tending to sustain the allegations of the return. The court said, relative to the question of estoppel, l. c. 76:

"All this evidence, whether by members of the county court or

others, which tended to impeach the record of the court, or vary the terms of the written agreement was incompetent, and it is useless to encumber the opinion with the explanatory evidence given by Mr. Chaney, the relator herein.

"County courts (Sec. 2333, R. S. 1919) are courts of record, and can only speak by their record. The record sets out and recites the contract to be made with Mr. Chaney. This oral evidence only goes to alleged oral statements prior to the court record, and prior to the written contract entered into pursuant to the terms of the court record. These oral statements if such there were, are inadmissible to impeach and overthrow the solemn record of the county court."

The court also decided against the respondent because any contract for the settlement of the unpaid salary due relator must, under the statute, have been in writing. Respondent in the case at bar seems to think the case turned on that part of the opinion dealing with that phase of the case. However, we are not concerned with what was said by the court in relation to this for the reason that the court had already indicated and based its decision, on the question of estoppel, at least in part, upon the ground that the oral statement and agreement impeached the record. It is apparent that respondent in the case at bar is attempting, under the claim of estoppel, to vary the terms of the order, which cannot be done.

Neither can relator contend that relatrix and her attorney were guilty of fraud in that the agreement for the appointment of the coadministrator was an inducement for the making of the order and that there has been a breach of faith on their part and that it is proper to introduce parol testimony relative to the matter to prevent a fraud on the court. The court in the Grinstead case, stated, l. c. 79:

"But in addition to this, evidence of previous talks, i. e. talks prior to the making of a written agreement, is not competent to impeach the written instrument, because all previous matters are presumed to have been fully threshed out, and merged into the written contract and such written contract is presumed to express the final understandings of the parties.

"*Attempts to prove such matters on the theory that they consituted inducements for the contract* have been condemned by this court. Such things cannot be engrafted upon a plain written contract." [Italics ours.]

And likewise, such matters cannot be used on the ground that they constituted inducements for the judgment. Aside from this the record cannot be impeached collaterally by fraud of this nature arising out of the alleged acts of relatrix. [Howey v. Howey, 240 S. W. 450; Viehmann v. Viehmann, 250 S. W. 565; State ex rel. v. Ross, supra, l. c. 45, 46; 1 Freeman on Judgments, secs. 331, 333.]

It is contended that because relatrix, in her reply, denied the al-

legations of the return relative to the agreement for a coadministrator, the matter is an issue in the case. In addition to denying these matters, the return pleads estoppel by the judgment or order and other matters. At the hearing before the commissioner the relatrix objected to all the testimony relative to such alleged agreement. It is quite apparent that the reply wherein the matter of an agreement was denied, presented an immaterial issue, one which neither the commissioner nor this court is called upon to adjudicate. The cases cited by respondent under this head were ones arising in a lower court and where an effort was attempted to be made in the appellate court to have the case decided upon a different theory than that upon which the parties tried it in the lower court. These cases, clearly, are not in point.

It is insisted, however, that the peremptory writ of mandamus should not be issued in this case for the reason that the writ is not one of right and that relatrix is not entitled to it regardless of the circumstances of the case and that in this case the rights of third parties are involved, that is, the first wife and minor children of the deceased, who have a large interest in the estate; that the evidence shows that the relatrix is not a competent and suitable person to administer the estate. In this connection it is pointed out that it was her purpose to have her attorney, Mr. Lesher, appointed temporary president of the insurance company, should she get control of the estate. In this connection it is claimed that because the attorney was a lawyer, and not acquainted with the insurance business (the evidence shows that he tried all of the law suits of the insurance company in question), it is established that she is not a proper person to have control over the stock in the company, especially in view of her youth and lack of business experience. Reference is again made to the alleged agreement on the part of relatrix and her attorney for the appointment of a coadministrator. From what we have said this is not an issue in the case and cannot be made an issue in any such manner. It is but another effort to have the case decided upon a matter not in accord with the order of the court. The question as to whether the relatrix is a competent and suitable person to administer the estate is one solely for the probate court and over which this court has nothing to do. [State ex rel. v. Martin, supra; State ex rel. v. Nortoni, supra, l. c. 572.] As already stated, the probate court, having decided, in effect, that respondent is a suitable and competent person to act as coadministratrix of the estate, there is no merit in the contention.

We have examined the cases cited by respondent in connection with this point. The case upon which he seemingly relies, principally, is State ex rel. v. Bank, 174 Mo. App. 589. It is typical of the other cases cited on this point. It is stated in that case that mandamus is

not a writ of right and will not be issued regardless of the circumstances under which relator is demanding its use and the court is not bound to take the case as relator presents it but may consider defendant's rights, the interests of third parties, etc., and in some cases, even, where a clear *prima facie* right to the writ is shown, it may be refused; that cases might arise where relator has undoubtedly the right to relief for which mandamus is the appropriate remedy, but the court may, in the exercise of a wise judicial discretion refuse relief and it will refuse it if it operates harshly or where third parties not before the court may be injuriously effected. But on an examination of the facts in that case we find that it was a proceeding in mandamus seeking to compel a bank to recognize relator's right as a stockholder in the bank, he owning but three shares of its capital stock. After stating the rule relative to mandamus as we have set out, supra, the court said, l. c. 595:

"Applying these rules to the case in hand we see that there are a number of reasons why it was not an abuse of discretion to refuse the writ in this case. 1. The absolute worthlessness of relator's stock whereby his right does not involve a substantial interest but at most only a mere naked, technical legal right. 2. The inflexibility of a peremptory writ, which cannot be issued with terms of condition therein so as to adjust any mutual claims and demands which may exist between relator and the bank or between him and the other stockholders. 3. The possibility of doing injustice to third persons, not before the court, and the impossibility of knowing what results will flow from the granting of the peremptory writ to acknowledge and treat relator 'as a stockholder with all the privileges, rights and benefits thereof in such corporations.' 4. The existence of a full and complete remedy open to relator by a bill in equity in which he can secure, not only the special rights he seeks in this case, but also all general rights incident to his status as a stockholder and in which equitable suit all equities on each side can be taken into consideration and adjusted without harm, disorder, injustice, or confusion to anyone.''

Similar considerations governed the determination of other cases cited by the respondent on this point.

It will be borne in mind that there is no appeal from the action of the probate court in refusing to appoint an administrator. For this reason, the courts have not hesitated to issue a writ of mandamus compelling the probate judge to appoint a person as administrator where the facts indisputably show the right to the appointment. As was stated in the Fansher case, this is a valuable right which one may not be deprived of arbitrarily.

The probate court in this instance is presumed to have weighed all matters bearing upon the competency and suitability of the relatrix to serve as administratrix of this estate and in this respect to have

taken into consideration the rights of third parties. It had no discretion in the matter of the appointment of relatrix as sole administratrix of this estate, having found, in legal effect, that she was competent and suitable to serve as sole administratrix. Under such circumstances, under all of the authorities, the relatrix has the right to the issuance of the peremptory writ in this case.

It is insisted that the peremptory writ of mandamus should not be issued for the reason that the respondent has been deprived, by the issuance of the alternative writ, of his right and duty to set aside the appointment of the relatrix as coadministratrix during the term in which the order was made; that the application for the writ of mandamus was made to this court and notice issued to respondent to take no further steps in the case and the alternative writ issued prior to the expiration of the term of the probate court of Jackson county at which the order was made and before respondent had an opportunity to set aside the order.

There is no question but that the probate court, in common with other courts of record, has the discretion to set aside its orders and judgments during the term at which they are made and that it may obtain information from any source in ascertaining the facts upon which to base its action. [In re Henry County Burial Association, 77 S. W. (2d) 124.]

The facts in this connection show that the petition for the writ was filed in this court on April 24, 1935; that on the same day one of the judges of this court (the writer of this opinion) notified the respondent, in writing, to take no further action until the matter of the propriety of the issuance of the alternative writ could be considered. The alternative writ was not issued until May 6th. No suggestions were filed in opposition to the issuance of the alternative writ. The return to the writ was filed on May 8th. The term of the probate court at which the appointment was made did not expire until the 20th day of May. At no time prior to the expiration of the term did respondent signify, in any manner, that he had been prevented from exercising his discretion to set aside the order of appointment. On the contrary it appears that the first time that this contention was made was in the original brief of the respondent, filed after the hearing before the commissioner. It would appear that the suggestion is made rather late.

However, in reference to the setting aside of an order or judgment during the term at which it is rendered, upon the court's own motion, the St. Louis Court of Appeals, in the case of State ex rel. v. Arnold, 197 Mo. App. 1, 10, quoting from a prior decision of that court stated:

" 'Prior to the enactment of the Statute of April 18, 1891 (Laws 1891, p. 70), which first conferred the right of appeal from an order granting a new trial, the discretion of the trial court in vacating its

own judgments during the term was subject to review only when such discretion was arbitrarily or oppressively exercised. [*Nelson v. Ghiselin*, 17 Mo. App. 663.] Since the enactment of the Statute, however, that discretion is subject to the same review as any other order granting a new trial, because it would be absurd to hold when a court grants a new trial on motion of a party aggrieved, its action is subject to a full review, and when it grants it of its own motion it is subject to a limited review only.'" [See, also, Morris v. Morris, 60 Mo. App. 86; Scales v. Scales, 65 Mo. App. 292; Thompson v. Wendling, 219 S. W. 671, 672.]

It thus appears that there must be some legal ground to justify the court in setting aside a judgment or order upon its own motion during the term at which it is rendered. It may be that a judge has the power (after a hearing) even without any additional testimony or being in possession of any additional facts after the entry of the judgment, to conclude that he has made a mistake and for that reason set aside the judgment. In this case it is admitted that no hearing was ever had relative to the competency and suitability of the relatrix to act as administratrix of the estate. Respondent in this case testified, himself, relative to this matter. He stated:

"Now the day before that letter was issued, I heard about Lesher's (relatrix' attorney) statement that he didn't know whether he was going to stand by this order I had made, and I called him and he came to my office in the Scarritt Building. I then said to him 'I understand that there is some question about whether you are going to stand by my order or not.' He said, 'No.' I said 'Well, now if there is any question about it, I don't think this woman is competent and I am going to write up an order setting out that fact, because I don't think she should serve and serve alone anyway.' He never one single instance while he was in my office indicated to me any dissatisfaction about it, not a single time."

It may be stated here that relatrix' attorney testified that he was told by the judge that he would find relatrix incompetent to serve unless the witness consented to the order that had been made, but he denied that he did consent. However, assuming respondent's version of the matter to be the correct one, it will be borne in mind that relatrix, at the time respondent threatened to set aside the order, had a judgment which, on its face, entitled her to serve as sole administratrix of the estate. The question as to whether or not she consented to the order was not a material matter, as we have already stated. Respondent not only threatened to set aside her appointment, unless relatrix agreed to permit the order to stand, but he was going to find that she was not a competent person to serve as administratrix. This in the face of the admitted fact that no hearing had ever been had to determine whether she was a suitable and competent person. It

may be that no hearing is necessary in *the appointment* of those having preference to administer under the statute but no such person can be *refused appointment* without an opportunity to be heard upon the question of his competency and suitability. [Stevens v. Larwill, 110 Mo: App. 140, 153, 154; Sec. 8, R. S. 1929, Laws 1917, p. 93.] If respondent has any other ground for setting aside the order he has not disclosed it up to this time. It may be that his claim that the order on its face shows that he has found that relatrix is not competent to serve alone, is intended to be such a ground but we have already ruled this point adversely to respondent. So it follows that in the case at bar there is no legal justification suggested for setting aside the order.

The right to serve as administrator is a valuable one, as we have already stated, and the person given priority by the statute to serve as such cannot be deprived of that right without a hearing, if one is desired and, had the court set aside the order that he might accomplish what respondent desired to do, his action would have been wholly without any legal ground to support it.

We have held herein that the order in question establishes, on its face, the competency of relatrix to serve as sole administratrix of her husband's estate. Relatrix is asking nothing more than this right given her by the order be recognized. This purpose will be accomplished by making the writ peremptory, and it is so ordered. *Trimble, J.*, concurs; *Shain, P. J.*, dissents in a separate opinion.

### DISSENTING OPINION.

SHAIN, P. J.—I concur in the majority opinion in so far as the question of respondent's right to appoint coadministrators is concerned.

I cannot agree with the sustaining of the compelling orders of the alternative writ in respect to compelling the appointment of relatrix or recognizing relatrix as sole administratrix by annulling in part and, by the judgment of this court, compelling respondent to recognize her.

I conclude, as it is stated in the alternative writ, that the appointment of coadministrators was in effect a refusal to appoint the relatrix herein or to grant letters of administration to her alone.

The orders contained in the alternative writ are conflicting in that the writ compels respondent to appoint relatrix and compels respondent to recognize relatrix alone as appointed by the very order that the writ declares was a refusal to appoint her to act alone.

If the orders and decrees made by respondent in fact do appoint relatrix and can be construed as conclusive as to her qualifications, then mandamus does not lie for the reason that such writ cannot lie

to compel the doing of a thing already done. [Works v. Homer, 155 S. W. 405, 249 Mo. 58.]

If the majority opinion be right in the conclusion that relatrix stands duly adjudicated as qualified and appointed to administer alone, then the petition for mandamus should have been directed alone to the undoing of the orders made by the respondent in appointing of the Commerce Trust Company.

I conclude that the language as used by this court, in the alternative writ, is conclusive of the fact that the order of respondent appointing coadministrators did not adjudicate that relatrix possessed qualification to administer alone. While the respondent's order does not say, in express language, that the respondent had judicially passed adversely on relatrix' qualification, still there is sufficient expressed in respondent's order from which it may be concluded that in the exercise of the discretion, that respondent was clothed with, he had judicially determined that relatrix did not possess the necessary qualifications to act alone.

Further than above, in a mandamus proceeding directed to a judicial officer, said officer may impose defenses that are not fully disclosed in the record and can in his return assign reasons, which may not be clearly expressed as the grounds upon which his ruling was based when made. [Town Co. v. Mossman, 87 S. W. 75, 112 Mo. App. 540.]

If the above be not so, then our order for respondent to come into court and show cause serves no useful purpose.

If we give any credence or consideration of the reasons assigned by respondent in his answer herein, I conclude that it is shown conclusively that respondent, judicially and acting under his discretion, adjudicated as to relatrix' qualifications to act alone and that respondent found adversely as to her qualifications to act alone.

To my mind it is evident that the showing of the record herein is to the effect that respondent, after having concluded that relatrix did not possess the necessary qualifications to act alone, acting on an erroneous conclusion of fact, to-wit: that there was consent made to the order appointing coadministrators. This court should, of course compel the undoing of this act. However, for this court to say that said act is an adjudication of relatrix' qualifications to act and an appointment for her to act alone is in my mind a substitution of our findings and our judgment for that of the respondent, whose duty it was to adjudicate as to qualifications and whose duty it was to act.

As relatrix' petition states that the appointment of Commerce Trust Company was a refusal to appoint her alone and as the alternative writ so states, we conclude that there has been no orders made to appoint her alone, and to permit her to act alone would be to per-

mit her to act alone in face of the refusal on the part of the respondent to find her qualified and to so appoint her.

Concluding as I do, that based upon the language of the order itself and based upon the language in respondent's return, and the record showing herein, there has been a judicial determination by respondent touching relatrix' qualifications as to act alone. I, of course, conclude that any permanent writ given by this court should be directed as a compelling order undoing of the unwarranted act and directing the respondent to proceed in due conformity with law in the making of an appointment.

Without distinguishing between the cases, my language might be construed as in conflict with State ex rel. Eva C. Fansher and Marjorie Fansher v. Guinotte, 227 Mo. App. 902, 58 S. W. (2d) 1005.

In the Fansher case there were four persons who applied for letters. There was a judicial hearing had touching the qualifications of the applicants and testimony was heard by the court and the court made finding against two as not being qualified and for two as being qualified. After this hearing and finding, the court appointed as co-administrators the two that he had judicially found as qualified.

Our opinion determined in that case, that the appointment of co-administrators was unwarranted.

The only other question presented was the question of priority of right as to the two appointed.

In the Fansher case it is conclusively shown that one of the appointees, Eva C. Fansher had been duly approved as to qualifications to act and as it was conclusive that she had priority our writ compelled her to be recognized as such. Such order was well based upon the finding made in the trial of the question as presented and determined judicially by the court and it would be improper to base same from the act of appointing coadministrators.

The issues as presented in the case at bar are materially different. It is conceded by relatrix' petition that the respondent refused to appoint her alone and the writ so concedes.

The prayer of the petition in the present case asks this court to compel respondent to make appointment of relatrix and the writ itself compels respondent to appoint her as sole administratrix.

The petition, writ, answer and record in this case shows that the respondent has made what I conclude is a judicial determination as to relatrix' qualifications to act alone and that having so done mandamus will not lie as to such judicial determination. [Thompson v. Nortoni, 191 S. W. 429, 269 Mo. 562; State ex rel. Reismeyer v. Holtcamp, 200 S. W. 204, 273 Mo. 124.]

The writ that should be issued by this court, I conclude, should not go further than to compelling of the undoing of the act of respondent

in appointing coadministrators and to direct future procedure in accordance with the law as expressed in the statutes and the law as determined by adjudications by the appellate courts.